FILED
2021 Dec-27  AM 11:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## BIRMINGHAM DIVISION

| | | |
|---|---|---|
| FRANKIE JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERSON S. DUNN; | ) | Case No. _____ |
| GWENDOLYN GIVENS; | ) | |
| PHYLLIS MORGAN; | ) | |
| VENCINI SMITH; | ) | |
| DEAUNDRA JOHNSON; | ) | |
| SHANNON CALDWELL; | ) | |
| REGINAL RAMBO; | ) | |
| OFFICER MATTHREW; | ) | |
| RAYMOND GAINES; | ) | |
| WILLIAM COOK; | ) | |
| OFFICER SUTTON; | ) | |
| OFFICER STEVENSON; | ) | |
| OFFICER HUGH; | ) | |
| OFFICER JENKINSON; AND | ) | |
| LIEUTENANT CARL SANDERS, | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

Plaintiff Frankie Johnson ("Plaintiff" or "Mr. Johnson"), by his attorneys with the law firm of Norton Rose Fulbright US LLP and Anil Mujumdar, hereby files this Complaint against Defendants Commissioner Jefferson S. Dunn ("Dunn"); Correctional Warden III Gwendolyn Givens ("Givens"); Correctional Warden II Phyllis Morgan ("Morgan"); Correctional Warden I Vencini Smith ("Smith"); Officer Deaundra Johnson ("Johnson"); Officer Shannon Caldwell ("Caldwell"); Officer Reginald Rambo ("Rambo"); Officer Matthrew (full name unknown) ("Matthrew"); Officer Raymond Gaines ("Gaines"); Officer William Cook ("Cook"), Officer

Sutton (full name unknown) ("Sutton"); Officer Stevenson (full name unknown) ("Stevenson"); Officer Hugh (full name unknown) ("Hugh"); Officer Jenkinson (full name unknown) ("Jenkinson"); and Lieutenant Carl Sanders ("Sanders") (collectively, the "Defendants") stating as follows:

## INTRODUCTION

1.      Plaintiff brings this lawsuit after having been repeatedly victimized while in the custody of the Alabama Department of Corrections ("ADOC").

2.      Mr. Johnson is housed at William E. Donaldson Correctional Facility in Bessemer, Alabama ("Donaldson"), alongside known enemies, including a prisoner who had previously assaulted him at the St. Clair Correctional Facility ("St. Clair").

3.      On or about December 27, 2019, Mr. Johnson was stabbed at least nine times, including twice in his leg, once in his gluteus, three times in his head, and three times in his arms. As many as thirteen prisoners perpetrated this attack on Mr. Johnson.

4.      Defendants continued to fail to protect Mr. Johnson at Donaldson even though they knew he was housed in dangerous conditions with known enemies and their associates, and as a consequence of their individual and collective failure, on or about March 5, 2020, while restrained in shackles and handcuffs during a therapy session, Mr. Johnson was stabbed repeatedly by another prisoner at Donaldson.

5.      Although Mr. Johnson had been injured by stabbing in two separate incidents, Defendants still failed to protect him. As a consequence of these failures, in November 2020, Mr. Johnson was stabbed five to six times, including four times in his back and once in his head, by another prisoner and known enemy.

6.      As set forth in more detail below, the dangerous conditions that led to Mr. Johnson's serious injuries at Donaldson were well known to Defendants, who exhibited deliberate indifference to his safety and failed to protect him from a substantial risk of serious harm.

7.      Plaintiff brings this action to redress his grievous physical and emotional injuries and to seek accountability for the assaults and violence perpetrated against him due to Defendants' disregard for his safety.

## JURISDICTION AND VENUE

8.      This action is brought pursuant to 42 U.S.C. § 1983 to redress Defendants' deprivation of Mr. Johnson's rights secured by the U.S. Constitution.

9.      This Court has jurisdiction of Mr. Johnson's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claim pursuant to 28 U.S.C. § 1367.

10.     Venue is proper under 28 U.S.C. § 1391(b), as the majority of the Defendants reside in this judicial district and the events and omissions giving rise to Mr. Johnson's claims occurred within this judicial district.

## PARTIES

**A.      Plaintiff**

11.     Plaintiff Frankie Johnson is over the age of nineteen (19) years old and has been imprisoned at Donaldson since 2018.

**B.      Defendants**

12.     Defendant Jefferson Dunn became Commissioner of the ADOC in 2015 and was the Commissioner of the ADOC leading up to and during the events described in this Complaint.

       a.      Mr. Johnson sues Defendant Dunn in his individual capacity. At all times relevant to this lawsuit, Defendant Dunn was acting under color of law and within the scope of his employment. Defendant Dunn is above the age of majority.

b.      As Commissioner, Defendant Dunn is the highest-ranking official in the ADOC and is responsible for the direction, supervision, and control of the ADOC.

c.      Defendant Dunn is ultimately responsible for policies at Donaldson, as he is for all the prisons in the ADOC system.  Defendant Dunn is also ultimately responsible for ensuring that the practices at Donaldson conform to any applicable policies.

d.      Defendant Dunn has a duty to create, implement, enforce, and amend prison policies in order to ensure the safety of all prisoners, including that of Mr. Johnson.

e.      Defendant Dunn had a duty to ensure Mr. Johnson's safety at all times.

f.      As set forth in more detail below, Defendant Dunn's actions and failures to act created or perpetuated an unsafe environment at Donaldson.

g.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Dunn, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of Mr. Johnson's rights by his actions or by his deliberate indifference and failures to act.

13.    Defendant Gwendolyn Givens was the Correctional Warden III at Donaldson leading up to and during the events described in this Complaint.  Defendant Givens received numerous complaints from Mr. Johnson regarding his safety concerns but failed to act on his complaints.  Defendant Givens was also present during the December 2019 assault on Mr. Johnson.

a.      Mr. Johnson sues Defendant Givens in her individual capacity.  At all times relevant to this lawsuit, Defendant Givens was acting under color of law and within the scope of her employment.  Defendant Givens is above the age of majority.

b.      As Correctional Warden III, Defendant Givens was responsible for the day-to-day supervision of Donaldson, including but not limited to:

i.      ensuring adequate staffing levels with appropriately trained personnel;

ii.     ensuring adequate supervision and monitoring of prisoners, including their movements within and between cellblocks;

iii.    implementing procedures for safely conducting prisoner counts, including the unlocking and re-locking of closed cell doors during such counts;

iv.     implementing procedures for preventing prisoners from accessing the cells of other prisoners; and

v.      making decisions about housing assignments for prisoners, particularly violent or dangerous prisoners.

c.      Defendant Givens had a duty to create, implement, enforce, and amend policies and procedures at Donaldson in order to ensure the safety of all prisoners, including that of Mr. Johnson.

d.      Defendant Givens had a duty to ensure Mr. Johnson's safety at all times.

e.      As set forth in more detail below, Defendant Givens's actions and failures to act created or perpetuated an unsafe environment at Donaldson.

f.      Defendant Givens's breaches of her duties proximately caused the constitutional violations and other injuries complained of herein.

g.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Givens, who personally knew about, facilitated,

approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by her actions or by her deliberate indifference and failures to act.

14.     Defendant Phyllis Morgan was the Correctional Warden II at Donaldson leading up to and during the events described in this Complaint.

    a.     Mr. Johnson sues Defendant Morgan in her individual capacity.  At all times relevant to this lawsuit, Defendant Morgan was acting under color of law and within the scope of her employment.  Defendant Morgan is above the age of majority.

    b.     As Correctional Warden II, Defendant Morgan was responsible for the day-to-day supervision of Donaldson, including but not limited to:

        i.     ensuring adequate staffing levels with appropriately trained personnel;

        ii.     ensuring adequate supervision and monitoring of prisoners, including their movements within and between cellblocks;

        iii.     implementing procedures for safely conducting prisoner counts, including the unlocking and re-locking of closed cell doors during such counts;

        iv.     implementing procedures for preventing prisoners from accessing the cells of other prisoners; and

        v.     making decisions about housing prisoners, particularly violent or dangerous prisoners.

    c.     Defendant Morgan had a duty to create, implement, enforce, and amend prison policy in order to ensure the safety of all prisoners, including that of Mr. Johnson.

    d.     Defendant Morgan had a duty to ensure Mr. Johnson's safety at all times.

e.    Defendant Morgan's actions and failures to act created or perpetuated an unsafe environment at Donaldson.

f.    As set forth in more detail below, Defendant Morgan's breaches of her duties proximately caused the constitutional violations and other injuries complained of herein.

g.    Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Morgan, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by her actions or by her deliberate indifference and failures to act.

15.    Defendant Vencini Smith was the Correctional Warden I at Donaldson leading up to and during the events described in this Complaint.

a.    Mr. Johnson sues Defendant Smith in his individual capacity.  At all times relevant to this lawsuit, Defendant Smith was acting under color of law and within the scope of his employment.  Defendant Smith is above the age of majority.

b.    As Correctional Warden I, Defendant Smith was responsible for the day-to-day supervision of Donaldson, including but not limited to:

i.    ensuring adequate staffing levels with appropriately trained personnel;

ii.    ensuring adequate supervision and monitoring of prisoners, including their movements within and between cellblocks;

iii.    implementing procedures for safely conducting prisoner counts, including the unlocking and re-locking of closed cell doors during such counts;

iv.    implementing procedures for preventing prisoners from accessing the cells of other prisoners; and

v.    making decisions about housing prisoners, particularly violent or dangerous prisoners;

c.    Defendant Smith had a duty to create, implement, enforce, and amend prison policy in order to ensure the safety of all prisoners, including that of Mr. Johnson.

d.    Defendant Smith had a duty to ensure Mr. Johnson's safety at all times.

e.    Defendant Smith's actions and failures to act created or perpetuated an unsafe environment at Donaldson.

f.    Defendant Smith's breaches of his duties proximately caused the constitutional violations and other injuries complained of herein.

g.    Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Smith, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

16.    Defendant Deaundra Johnson was a correctional officer at Donaldson, who held the position of Captain, leading up to and during the events described in this Complaint. Specifically, Defendant Johnson has received numerous complaints from Mr. Johnson regarding concern for his safety at Donaldson.  Defendant Johnson was one of the officers on duty on V

Block when Mr. Johnson was assaulted on December 27, 2019 and was responsible for ensuring Mr. Johnson's safety.

a.     Mr. Johnson sues Defendant Johnson in her individual capacity.  At all times relevant to this lawsuit, Defendant Johnson was acting under color of law and within the scope of her employment.  Defendant Johnson is above the age of majority.

b.     As a correctional officer, Defendant Johnson had a duty to ensure Mr. Johnson's safety at all times.

c.     Defendant Johnson breached her duty by, among other things, failing to:

i.     prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.     prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

iii.     prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.     prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.     Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Johnson, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused

the alleged deprivation of rights by her actions or by her deliberate indifference and failures to act.

17.     Defendant Shannon Caldwell was a correctional officer at Donaldson, who held the position of Captain, leading up to and during the events described in this Complaint.  Specifically, Defendant Caldwell was one of the officers responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

      a.     Mr. Johnson sues Defendant Caldwell in her individual capacity.  At all times relevant to this lawsuit, Defendant Caldwell was acting under color of law and within the scope of her employment.  Defendant Caldwell is above the age of majority.

      b.     As a Captain, Defendant Caldwell had a duty to ensure Mr. Johnson's safety at all times.

      c.     Defendant Caldwell breached her duty by, among other things, failing to:

        i.     prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

        ii.     prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

        iii.     prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

        iv.     prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Caldwell, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by her actions or by her deliberate indifference and failures to act.

18.     Defendant Reginald Rambo was a correctional officer at Donaldson leading up to and during the events described in this Complaint.  Specifically, Defendant Rambo was the officer on duty in the D Block in November 2020 when Mr. Johnson was attacked.  Defendant Rambo is also responsible for the safety of all prisoners at the facility and the supervision of institutional activities, including the provision of food to prisoners.

a.      Mr. Johnson sues Defendant Rambo in his individual capacity.  At all times relevant to this lawsuit, Defendant Rambo was acting under color of law and within the scope of his employment.  Defendant Rambo is above the age of majority.

b.      As a correctional officer, Defendant Rambo had a duty to ensure Mr. Johnson's safety at all times.

c.      Defendant Rambo breached his duty by, among other things, failing to:

i.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.      prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

iii.       prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.       prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.       Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Rambo, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

19.       Defendant Matthrew (full name unknown) was a correctional officer at Donaldson leading up to and during the events described in this Complaint.  Specifically, Defendant Matthrew was one of the officers on duty in V Block on March 5, 2020 when Mr. Johnson was attacked.

a.       Mr. Johnson sues Defendant Matthrew in his individual capacity.  At all times relevant to this lawsuit, Defendant Matthrew was acting under color of law and within the scope of his employment.  Defendant Matthrew is above the age of majority.

b.       As a correctional officer, Defendant Matthrew had a duty to ensure Mr. Johnson's safety at all times.

c.       Defendant Matthrew breached his duty by, among other things, failing to:

i.       prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.      prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

iii.     prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.     prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.     Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Matthrew, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

20.     Defendant Raymond Gaines was a correctional officer at Donaldson, leading up to and during the events described in this Complaint.  Specifically, Defendant Gaines was one of the officers responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

a.     Mr. Johnson sues Defendant Gaines in his individual capacity.  At all times relevant to this lawsuit, Defendant Gaines was acting under color of law and within the scope of his employment.  Defendant Gaines is above the age of majority.

b.     Defendant Gaines had a duty to ensure Mr. Johnson's safety at all times.

c.     Defendant Gaines breached his duty by, among other things, failing to:

i.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.     prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

iii.    prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.    prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.     Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Gaines, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

21.    Defendant William Cook was a correctional officer at Donaldson leading up to and during the events described in this Complaint.  Specifically, Defendant Cook was one of the officers responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.  He was also present during the November 2020 attack on Mr. Johnson.

a.     Mr. Johnson sues Defendant Cook in his individual capacity.  At all times relevant to this lawsuit, Defendant Cook was acting under color of law and within the scope of his employment.  Defendant Cook is above the age of majority.

b.     As a correctional officer, Defendant Cook had a duty to ensure Mr. Johnson's safety at all times.

c.     Defendant Cook breached his duty by, among other things, failing to:

i.     prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.     prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks;

iii.     prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.     prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.     Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Cook, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

22.     Defendant Sutton (full name unknown) was a correctional officer at Donaldson who held the position of Captain leading up to and during the events described in this Complaint.

Specifically, Defendant Sutton was one of the officers responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

a.     Mr. Johnson sues Defendant Sutton in his individual capacity.  At all times relevant to this lawsuit, Defendant Sutton was acting under color of law and within the scope of his employment.  Defendant Sutton is above the age of majority.

b.     As a Captain, Defendant Sutton had a duty to ensure Mr. Johnson's safety at all times.

c.     Defendant Sutton breached his duty by, among other things, failing to:

i.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.     prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

iii.    prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.    prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.     Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Sutton, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused

the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

23.     Defendant Stevenson (full name unknown) was a correctional officer at Donaldson leading up to and during the events described in this Complaint.  Specifically, Defendant Stevenson was present during the attack on Mr. Johnson of March 5, 2020.  Defendant Stevenson is responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

      a.     Mr. Johnson sues Defendant Stevenson in his individual capacity.  At all times relevant to this lawsuit, Defendant Stevenson was acting under color of law and within the scope of his employment.  Defendant Stevenson is above the age of majority.

      b.     As a correctional officer, Defendant Stevenson had a duty to ensure Mr. Johnson's safety at all times.

      c.     Defendant Stevenson breached his duty by, among other things, failing to:

        i.     prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

        ii.     prevent prisoners from moving freely between different areas at Donaldson, including the N Dorm and V blocks;

        iii.     prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

        iv.     prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Stevenson, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

24.      Defendant Hugh (full name unknown) was a correctional officer at Donaldson leading up to and during the events described in this Complaint.  Specifically, Defendant Hugh was present during the attack on Mr. Johnson of March 5, 2020.   Defendant Hugh is responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

a.      Mr. Johnson sues Defendant Hugh in his individual capacity.  At all times relevant to this lawsuit, Defendant Hugh was acting under color of law and within the scope of his employment.  Defendant Hugh is above the age of majority.

b.      As a correctional officer, Defendant Hugh had a duty to ensure Mr. Johnson's safety at all times.

c.      Defendant Hugh breached his duty by, among other things, failing to:

i.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.      prevent prisoners from moving freely between different areas at Donaldson, including the N Dorm and V blocks;

iii.      prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.      prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Hugh, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

25.      Defendant Jenkinson (full name unknown) was a correctional officer at Donaldson leading up to and during the events described in this Complaint.   Specifically, Defendant Jenkinson was one of the officers on duty on V Block during the attack on Mr. Johnson of December 27, 2019.   Defendant Jenkinson is responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

a.      Mr. Johnson sues Defendant Jenkinson in his individual capacity.   At all times relevant to this lawsuit, Defendant Jenkinson was acting under color of law and within the scope of his employment.   Defendant Jenkinson is above the age of majority.

b.      As a correctional officer, Defendant Jenkinson had a duty to ensure Mr. Johnson's safety at all times.

c.      Defendant Jenkinson breached his duty by, among other things, failing to:

i.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.      prevent prisoners from moving freely between different areas at Donaldson, including the N Dorm and V blocks;

iii.      prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.      prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Jenkinson, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

26.      Defendant Carl Sanders was a correctional officer at Donaldson leading up to and during the events described in this Complaint.  Specifically, Defendant Sanders was one of the officers that is responsible for the safety of all prisoners at Donaldson and the supervision of institutional activities and subordinate employees.

a.      Mr. Johnson sues Defendant Sanders in his individual capacity.  At all times relevant to this lawsuit, Defendant Sanders was acting under color of law and within the scope of his employment.  Defendant Sanders is above the age of majority.

b.      As a correctional officer, Defendant Sanders had a duty to ensure Mr. Johnson's safety at all times.

c.      Defendant Sanders breached his duty by, among other things, failing to:

i.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

ii.      prevent prisoners from moving freely and without restriction between different areas at Donaldson, including by "tricking" their cell door locks and removing their handcuffs;

iii.      prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments; and

iv.      prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

d.      Further, the constitutional violations and other injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson, which occurred with the consent of Defendant Sanders, who personally knew about, facilitated, approved, or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of rights by his actions or by his deliberate indifference and failures to act.

## FACTUAL BACKGROUND

A.    **Mr. Johnson's Transfer to Donaldson**

27.    In 2018, Mr. Johnson was transferred to Donaldson.

28.     Donaldson is a maximum-security (Level V) prison, where beatings, stabbings, and rapes have become routine and much of the prisoner population possesses contraband  weapons to either perpetrate violence or defend against threats of violence.

29.     From the time he arrived at Donaldson, Mr. Johnson has been routinely exposed to violent and unsafe conditions at Donaldson, including being stabbed on at least three occasions and being exposed to unsafe and unsanitary meal and hygiene conditions.

**B.     Meal and Hygiene Conditions**

30.      Prisoners at Donaldson eat meals together.  Defendants Rambo, Cook, and Gaines supervise the chow hall where prisoners eat their meals. Some of Mr. Johnson's known enemies, including those believed to have been involved with the assaults on Mr. Johnson, are in the chow hall during the service of Mr. Johnson's meals and as a result, he is in constant fear for his safety during every meal, every day.

31.     Because of these constant fears and concern for his own safety, Mr. Johnson finds it very difficult to eat his meals in the presence of his enemies and often does not eat the meals in the time allotted.

32.     Mr. Johnson has diabetes, and his doctors have prescribed a special diet that is appropriate for this condition.  Mr. Johnson has not received this diet for many months while at Donaldson.

33.     According to ADOC Administrative Regulations, people incarcerated in Alabama's prisons, including Mr. Johnson, are entitled to "a healthy environment" which "will include…(a) clean and orderly surroundings; (b) toilet facilities and a sink with hot and cold water; (c) adequate lighting, ventilation, and heating; (d) a wholesome diet; (e) clean and fitted seasonable clothing; (f) beds constructed off of the floor; and (g) access to shower and exercise area."

34.     Mr. Johnson was denied a "healthy environment" under the ADOC Regulations.  In particular, Mr. Johnson has not been provided with a clean cell or the products to clean his cell.  Additionally, the Donaldson facility is infested with rodents and roaches, and trash is not properly collected or disposed of throughout the facility.

35.     Likewise, Mr. Johnson is regularly denied the right to take showers.  Upon knowledge and belief, Defendant Gaines has prevented Mr. Johnson from taking a shower on several occasions.  Most recently, Mr. Johnson was forced to go two weeks without a shower.  Defendants do not attend to these fundamental policies to respect human dignity as a matter of practice, month after month, year after year, and relatedly fail to take consistent actions to eliminate the ubiquitous presence of contraband weapons at Donaldson

**C.     The December 2019 Attack and Stabbing of Mr. Johnson**

36.     On or about December 27, 2019, Mr. Johnson was in the N Dorm, a general population unit that houses over 100 prisoners.

37.     While in the N Dorm, Mr. Johnson was involved in a confrontation with another prisoner and known enemy ("Prisoner A").[1]

38.     While the two men were arguing, a group of prisoners attacked Mr. Johnson from behind.  When Mr. Johnson attempted to defend himself, Prisoner A and the other men began beating and stabbing him.

39.     There were no officers present in the N Dorm at the time of this attack on Mr. Johnson.  Defendant Jenkinson was on duty at the time of the attack.

---

[1] Mr. Johnson is uncertain of the legal names of his assailants and only knows them by prison nicknames.  Thus, Mr. Johnson has identified his primary assailants in each of the three separate stabbings as "Prisoner A", "Prisoner B", and "Prisoner C", respectively.

40.     Approximately thirteen prisoners were involved in this attack on Mr. Johnson.  Mr. Johnson was stabbed at least nine times, including twice in his leg, once in his gluteus, three times in his head, and three times in his arms.

41.     Mr. Johnson eventually managed to pull himself away from his attackers and seek help.  Eventually an officer called for a code over the PA system and other Donaldson staff came to assist Mr. Johnson.  Defendants Givens and Johnson ultimately arrived at the scene, but were not present when Mr. Johnson was attacked.

42.     Mr. Johnson was placed in a wheelchair and transported to the University of Alabama at Birmingham Hospital in Birmingham, Alabama ("UAB") the same day.

43.     UAB reported that Mr. Johnson "present[ed] as a level 1 trauma from prison after multiple stab wounds."  The UAB staff treated Mr. Johnson's wounds and gave him a blood transfusion then discharged him back into the custody of the Donaldson staff.

44.     Prisoner A, Mr. Johnson's primary assailant, was treated at the same hospital at the same time as Mr. Johnson and briefly visited Mr. Johnson's room at the hospital.

45.     Despite the serious nature of Mr. Johnson's wounds, he was not admitted into the infirmary upon his return to Donaldson on December 27, 2019.  Instead, Mr. Johnson was returned to a cold, empty cell that did not have a bed or any other property.  Mr. Johnson did not receive regular medical care in his cell other than the occasional visit from a member of Donaldson staff to clean and redress his wounds upon request.  Mr. Johnson continues to suffer from physical pain and emotional anguish as a result of this attack.

46.     Mr. Johnson was disciplined for the incident because he had a contraband weapon and attempted to defend himself from his attackers, who also possessed contraband weapons.

**D.     The March 2020 Attack and Stabbing of Mr. Johnson**

47.     In March 2020, Mr. Johnson was assigned to a specialized security unit in V Block at Donaldson Correctional Facility.

48.     According to reports from the prison, the V Block is run as a high security unit. ADOC's standard security procedures for V Block require that prisoners be generally locked in their cells throughout the day, that they be shackled and handcuffed whenever they are removed, and that prisoners are not allowed to exit their cells without security officers present and escorting them.

49.     Prisoners are generally assigned to V Block because they have either demonstrated a pattern of disruptive behavior that requires higher security management, or because they are at risk of serious assault when housed in general population. The V Block unit also reportedly houses prisoners with mental health needs, and people assigned to V Block can receive therapy programming inside the housing unit.

50.     On or about March 5, 2020, Defendants Matthrew, Cook, Stevenson, and Hugh removed Mr. Johnson from his cell, handcuffed him and put shackles on his legs, and took Mr. Johnson to his regularly scheduled therapy class, which was conducted within the V Block. Along with the mental health professional leading the therapy session, there were other prisoners present during the meeting.

51.     Per DOC protocol, Mr. Johnson's legs were shackled and he was handcuffed to a table for the duration of the meeting.  After handcuffing Mr. Johnson to the desk, Defendants exited the unit. An officer was present in the unit's cubicle but was unavailable to physically intervene in the event of any disruption.

52.     While Mr. Johnson was in this restrained state, another prisoner  ("Prisoner B") left his cell and came downstairs to the meeting, where he stabbed Mr. Johnson five times.

53.     Prisoner B, who should have been locked in his cell at this time, "tricked" the lock on his cell door in order to open it, which enabled him to leave the cell and attack Mr. Johnson, stabbing him five times.

54.     The cubicle officer did not respond to the incident and the mental health professional leading the therapy session ran to seek help from a correctional officer since none responded in real time.  Mr. Johnson was later treated in the Donaldson infirmary.

**E.     The November 2020 Attack and Stabbing of Mr. Johnson**

55.     In November 2020, Mr. Johnson was assigned to the D Block at Donaldson Correctional Facility.

56.     Per ADOC policies and procedures, correctional officers gathered some of the prisoners in D Block to go to the recreational yard (the "Yard").  Defendant Rambo then came to Mr. Johnson's cell, took him out of the cell, handcuffed and shackled him, and transported him to the Yard. Defendant Rambo exited the yard immediately after transporting Mr. Johnson to the Yard.

57.     As Mr. Johnson was exiting the door that opened into the Yard, another prisoner and known enemy ("Prisoner C") charged towards Mr. Johnson and stabbed him with an ice pick five to six times: at least four times in his back and once in his head.

58.     After Mr. Johnson was stabbed, Defendants Rambo and Cook restrained Prisoner C.

59.     Mr. Johnson was transported to the infirmary where he was treated for his wounds.

60.     Mr. Johnson has been placed on suicide watch on at least one occasion since the assaults he suffered at the hands of other prisoners.

**F.     The Institutional Failures that Allowed the Attacks to Occur**

61.   Mr. Johnson, like so many other prisoners in the Alabama prison system, was a victim of preventable violence committed by a fellow prisoner.  These attacks have been allowed to occur by the continuous and systemic failings of Defendants to protect prisoners in their care and custody.

   i.   *Department of Justice investigation and lawsuit*

62.   Prior to the December 2019 attack on Mr. Johnson, the unconstitutionally dangerous conditions in Alabama's men's prisons had already attracted attention from the federal government. In October 2016, the United States Department of Justice's ("DOJ") Civil Rights Division opened an investigation into the conditions at the ADOC's male prison facilities.  The DOJ published its findings in a report and issued a notice to the State of Alabama and the ADOC on April 2, 2019.

63.   Ultimately, the DOJ's investigation found that "[t]here is reasonable cause to believe that the [ADOC] has violated and is continuing to violate the Eighth Amendment rights of prisoners housed in men's prisons by failing to protect them from prisoner-on-prisoner violence and by failing to provide safe conditions."

64.   The DOJ further stated that "[t]he violations are severe, systemic, and exacerbated by serious deficiencies in staffing and supervision; overcrowding; ineffective housing and classification protocols; inadequate incident reporting; inability to control the flow of contraband into and within the prisons, including illegal drugs and contraband weapons; ineffective prison management and training; insufficient maintenance and cleaning of facilities; the use of segregation and solitary confinement to both punish and protect victims of violence and/or sexual abuse; and a high level of violence that is too common, cruel, of an unusual nature, and pervasive."   The DOJ also found that in 2019, more prisoners were killed by other prisoners in Alabama's prisons than in any year in the prior decade.

65.     After publishing its report, the DOJ determined that "the State of Alabama has failed or refused to correct the unconstitutional conditions in Alabama's prisons for men."  As a result, on December 9, 2020, shortly after the third occasion on which Mr. Johnson was stabbed, the DOJ initiated a lawsuit against Alabama and the ADOC.

ii.     *Defendants were aware that there is an increased risk of harm at Donaldson and the resulting substantial risk of serious harm to Mr. Johnson*

66.     Defendants have repeatedly been put on notice of the mismanagement and unsafe conditions at Donaldson.

67.     Defendants are aware that men across the system are able to regularly "trick" or defeat the locking mechanism on their cell doors, and it has been common knowledge for over a decade that the faulty locks at Donaldson have elevated that risk.

68.     Specifically, in *Hicks v. Hetzel*, a class-action lawsuit filed in 2009, the plaintiffs alleged that men at Donaldson were able to defeat their cell locks.  As part of the settlement of that lawsuit, the ADOC was required to have officers physically present twenty-four hours per day in many of the prisons dorms. The ADOC also agreed to solicit technical assistance from the National Institute of Corrections for help in reducing the presence of contraband weapons and other contraband at Donaldson.

69.     In April 2011, the ADOC settled a class action lawsuit over staff shortages and high levels of violence at Donaldson. The suit claimed there were too few guards to properly manage the overcrowded prison, and understaffing was described as a "crisis" by former Warden Stephen Bullard in a letter to the ADOC commissioner.

70.     In November 2015, the Equal Justice Initiative ("EJI") sent a notice to the ADOC's director of Investigations and Intelligence raising concerns that severe lapses in security in the segregation unit at Holman Correctional Facility contributed to multiple stabbing assaults. These

included men's ability to defeat locks in the unit and the absence of sufficient correctional officer staffing.

71.     In light of the risks associated with prisoners being able to defeat their cell locks, the ADOC has previously identified that such risks led to a policy requiring officers to ensure the cell door locks are secure and have not been manipulated.

72.     On July 16, 2019, Donaldson correctional officers conducted a predawn sweep for contraband ("the July 16, 2019 Sweep").  As a result of the July 16, 2019 Sweep, Donaldson officers confiscated 500 makeshift weapons among other contraband items from multiple cells. As evidenced by the July 16, 2019 Sweep, the presence of contraband weapons was pervasive. The number of contraband weapons found in the Sweep demonstrates Defendants' failures to act long before the multiple stabbings that occurred in 2019 and 2020, and evidence Defendants' failures to consistently take the actions they were capable of taking to mitigate the risk of violence against Mr. Johnson and other prisoners.

73.     In addition to the incidents noted above, Defendants were aware that contraband knives were pervasive at Donaldson in the years leading up to the multiple stabbings Mr. Johnson suffered.  Both prisoners and correctional officers have been stabbed by prisoners at Donaldson for years because of repeated failures to prevent the entry of contraband weapons into Donaldson and to remove contraband weapons from Donaldson.  For example:

    a.     In July 2014, a prisoner was stabbed in the head by another prisoner, lost consciousness after several minutes, and died from his injury.

    b.     A prisoner was stabbed to death during a fight with two other prisoners in November 2015.

c.      During a cell search in November 2016, a prisoner stabbed a correctional officer.

d.      In April 2017, a prisoner stabbed and injured a correctional officer with a contraband knife.

e.      In March 2018, prisoners used a broomstick to attack another prisoner who was taken to the hospital for treatment of his injuries and required emergency surgery to remove the object from his rectum.

f.      A prisoner required hospitalization for stab wounds he received in a knife fight with another prisoner in April 2018.

g.      In the summer of 2018, a prisoner was stabbed in the back of the head at Donaldson by another prisoner.

h.      On January 24, 2020, a correctional officer was stabbed and suffered a head injury while attempting to break up a fight at Donaldson.

## G.    Defendants' Specific Failures With Respect to Mr. Johnson

74.     The unsanitary living conditions and environment of unchecked violence were allowed to persist at Donaldson due to Defendants' failures to meaningfully address the issues. On December 27, 2019, March 5, 2020, and in November 2020, these conditions directly resulted in serious physical and emotional injury to Mr. Johnson.

   i.      *Failure to provide adequate supervision or accountability*

75.     Defendants, through their acts and omissions, failed to provide adequate supervision of prisoners housed in Donaldson or accountability among administrative and correctional staff working in Donaldson in order to prevent violence.

76.     As set forth above, although the N Dorm is a general population unit that houses over 100 prisoners, there were no officers present in the N Dorm at the time of the December 27, 2019 attack on Mr. Johnson.

77.     This lack of officer presence allowed thirteen prisoners to attack and severely injure Mr. Johnson on December 27, 2019.  Mr. Johnson was stabbed at least nine times, including twice in his leg, once in his gluteus, three times in his head, and three times in his arms.

78.     Additionally, in January 2020, a correctional officer was stabbed and suffered a head injury while attempting to break up a fight at Donaldson.

79.     Defendants took no meaningful steps to address the substantial risk of serious harm to prisoners such as Mr. Johnson prior to his assault. Despite being aware of the risk of violence from and between prisoners at Donaldson, Defendants took no action to ensure that officers were present to supervise prisoners in the N Dorm, including on December 27, 2019.

80.     These Defendants acted with deliberate indifference and their misconduct placed vulnerable prisoners such as Mr. Johnson at substantial risk of serious harm and caused his injuries.

   *ii.*   *Failure to ensure adequate treatment of injures*

81.     Despite the serious nature of Mr. Johnson's wounds, Mr. Johnson was not admitted into the infirmary upon his return to Donaldson from the hospital on December 27, 2019.  Instead, Mr. Johnson was returned to his cell, where he was bedridden for several days due to the severity of his injuries from the stabbing earlier that same day.

82.     After December 27, 2019, Defendants failed to ensure that Mr. Johnson received regular medical care in his cell other than the occasional visit from a member of Donaldson staff to clean and redress his wounds.

   *iii.*   *Failure to secure prisoner cells*

83. As set forth above, Defendants were aware that men across the system are able to regularly "trick" or defeat the locks on their cell doors, and have known for over a decade that the locks at Donaldson have elevated that risk.

84. Defendants have also long been aware that men are able to defeat their cell locks in Donaldson, and the ADOC has previously acknowledged that this has led to a policy that requires officers ensure the cell locks are secure and have not been manipulated.

85. Yet, Defendants took no meaningful steps to implement this policy effectively to reduce the substantial risk of serious harm to prisoners that would result from failing to secure prisoner cells.

86. Specifically, on or about March 5, 2020, Prisoner B was able to "trick" the door lock of his cell in V Block, run out of his cell with a knife, and stab Mr. Johnson during a therapy session.

87. Defendants acted with deliberate indifference to prisoner safety, including the safety of Mr. Johnson, by failing to implement policies and procedures that ensured that cell doors were locked and that prisoners could not "trick" the lock to escape their cells.

*iv.* *Failure to restrict prisoner access to contraband weapons*

88. Defendants, through their acts and omissions, permitted contraband weapons to proliferate at Donaldson and failed to effectively control the introduction, manufacture, and use of contraband weapons by prisoners at Donaldson, exhibiting deliberate indifference to the substantial risk of serious harm that such contraband weapons created to prisoners such as Mr. Johnson.

89. The widespread proliferation of contraband weapons within Donaldson contributed to the high rate of violence and death and created a substantial risk of serious harm to prisoners such as Mr. Johnson.

90.     Defendants confiscated 500 contraband weapons in the July 16, 2019 Sweep at Donaldson.  Thus, Defendants were well aware of the proliferation of contraband weapons at Donaldson prior to the first attack on Mr. Johnson in December 2019, but failed to conduct any further sweeps or otherwise address the issue.

91.     The failure to control the possession and use of contraband weapons created a dangerous culture whereby prisoners knew they could possess such weapons with impunity and felt emboldened to use such weapons without fear of incurring any disciplinary action.

92.     Defendants permitted contraband weapons to proliferate at Donaldson and took no meaningful action to curtail the widespread availability of contraband weapons at Donaldson, exhibiting deliberate indifference to prisoners such as Mr. Johnson who were likely to be victimized by such contraband weapons.

93.     Defendants acted with deliberate indifference and their misconduct placed vulnerable prisoners such as Mr. Johnson at a substantial risk of serious harm.

94.     Predictably, Mr. Johnson was then victimized by several prisoners at Donaldson who were permitted access to contraband weapons, and he suffered severe physical and emotional injuries as a result.

   *v.*     *Defendants' failure to adequately respond to instances of prisoner misconduct*

95.     Defendants, through their acts and omissions, failed to properly respond to prior instances of prisoner misconduct in the time period leading up to Mr. Johnson's assaults at Donaldson.

96.     ADOC staff failed to adequately investigate acts of violence by prisoners at Donaldson, which emboldened violent prisoners such as Mr. Johnson's assailants and created the conditions under which the assaults on Mr. Johnson occurred.

97.     ADOC staff routinely retaliates against prisoners who report violence and threats of violence by subjecting such prisoners to discipline in conjunction with the prisoners' reports of violence and threats of violence.   This retaliation has the effect of deterring prisoners from reporting violence and threats of violence.

98.     These failures created a dangerous culture of violence at Donaldson, which, in turn, posed a substantial risk of serious harm to prisoners such as Mr. Johnson.

99.     Defendants were on notice of these failures, as well as the substantial risk of serious harm that resulted for prisoners such as Mr. Johnson.   Specifically, Mr. Johnson filed complaints with Defendants Givens, Johnson, and other ADOC officials regarding his fear for his safety at the hands of other Donaldson prisoners.

100.     Defendants were also put on notice of the culture of violence at Donaldson through their roles at Donaldson and ADOC, internal ADOC reports, communications with staff and prisoners, lawsuits, the July 16, 2019 Sweep, and media coverage.

101.     Defendants failed to adequately investigate violent acts by prisoners, emboldening violent prisoners such as Mr. Johnson's attackers.

102.     Defendants acted with deliberate indifference and their misconduct placed vulnerable prisoners such as Mr. Johnson at substantial risk of serious harm and caused his injuries.

### EXHAUSTION OF LEGAL REMEDIES

103.     There is no grievance procedure available to Mr. Johnson at Donaldson or through the ADOC for the violations Mr. Johnson pleads herein.

### CAUSES OF ACTION

### COUNT I—EIGHTH AMENDMENT FAILURE TO PROTECT

### [42 U.S.C § 1983]

### (Against Defendants Dunn, Givens, Morgan, and Smith)

104.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

105.     Pursuant to the Eighth Amendment of the United States Constitution, Mr. Johnson is entitled to be free from a substantial risk of serious harm while in the custody of the State.

106.     Protection from violence is one of the necessities of life that the State must provide prisoners under the Eighth Amendment.

107.     A constitutional duty of care arises when an individual's liberty has been restrained through the state's affirmative exercise of power over him, rendering unable to care for himself.

108.     Defendants Dunn, Givens, Morgan, and Smith, acting individually and in concert with each other, failed to protect Mr. Johnson.

109.     Defendants Dunn, Givens, Morgan, and Smith knew of and consciously disregarded the substantial risk that Mr. Johnson would be seriously harmed while in custody, failing to protect him from harm.

110.     The misconduct described in this cause of action was undertaken with deliberate indifference, malice, willfulness, or reckless indifference to the rights of Mr. Johnson and others and was objectively unreasonable.

111.     Defendants Dunn, Givens, Morgan, and Smith's misconduct directly and proximately caused Mr. Johnson to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

112.     Defendant Dunn failed to protect Mr. Johnson in the following ways:

a.     Defendant Dunn knew of the widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr.

Johnson.  Defendant Dunn was aware of monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the violence perpetrated against him by multiple prisoners which caused Mr. Johnson's injuries.

b.      Defendant Dunn knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from multiple prisoners accessing contraband weapons at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Dunn knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Dunn knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding the attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting prisoners, including Mr. Johnson's known enemies, to move from their assigned cells and gain access to Mr. Johnson, and ultimately attack him on three separate occasions.

e.     Defendant Dunn knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that the failure to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.     Defendant Dunn knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent other prisoners from gaining unauthorized entry into Mr. Johnson's therapy session and subsequently attacking him.

g.     Defendant Dunn knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Dunn nevertheless allows prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

113.   Defendant Givens failed to protect Mr. Johnson in the following ways:

a.     Defendant Givens knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.   Defendant Givens was aware of monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence

at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Givens knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband weapons at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Givens knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Givens knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e. Defendant Givens knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that the failure to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned. In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f. Defendant Givens knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's March 5, 2020 attack on Mr. Johnson. In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g. Defendant Givens knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson. In spite of this knowledge, Defendant Givens nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent the attacks on Mr. Johnson by Prisoner A, Prisoner B, and Prisoner C.

h. Defendant Givens knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Givens nevertheless allows prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Givens failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapons.

j.      Defendant Givens failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020, respectively.

114.   Defendant Morgan failed to protect Mr. Johnson in the following ways:

a.      Defendant Morgan knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Morgan knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband weapons at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Morgan knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding

the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Morgan knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Morgan knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that the failure to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Morgan knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's March 5, 2020 attack on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.       Defendant Morgan knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent the attacks on Mr. Johnson by Prisoner A,  Prisoner B,  and Prisoner C.

h.       Defendant Morgan knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Morgan nevertheless allows prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.       Defendant Morgan failed to prevent Prisoner B from gaining access to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

j.       Defendant Morgan failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapons.

k.       Defendant Morgan failed to prevent Prisoner B from gaining access to Mr. Johnson during his regularly scheduled therapy session without authorization.

l.       Defendant Morgan failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020, respectively.

115.   Defendant Smith failed to protect Mr. Johnson in the following ways:

a.     Defendant Smith knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.     Defendant Smith knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband weapons at Donaldson, which they used to stab and injure Mr. Johnson.

c.     Defendant Smith knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.     Defendant Smith knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect

Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.    Defendant Smith knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that the failure to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.    Defendant Smith knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's March 5, 2020 attack on Mr. Johnson.  In spite of the notice and his knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.    Defendant Smith knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent the attacks on Mr. Johnson by Prisoner A, Prisoner B,  and Prisoner C.

h.      Defendant Smith knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Smith nevertheless allows prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Smith failed to prevent Prisoner B from gaining access to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

j.      Defendant Smith failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapon.

k.      Defendant Smith failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

116.     Defendants misconduct directly and proximately caused Mr. Johnson to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

## COUNT II —EIGHTH AMENDMENT FAILURE TO PROTECT

### [42 U.S.C § 1983]

**(Against Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders)**

117.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

118.    Pursuant to the Eighth Amendment of the United States Constitution, Mr. Johnson is entitled to be free from a substantial risk of serious harm while in the custody of the State.

119.    Protection from violence is one of the necessities of life that the State must provide prisoners under the Eighth Amendment.

120.    A constitutional duty of care arises when an individual's liberty has been restrained through the state's affirmative exercise of power over him, rendering unable to care for himself.

121.    Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders, acting individually and in concert with each other, failed to protect Mr. Johnson.

122.    Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of and consciously disregarded the substantial risk that Mr. Johnson would be seriously harmed while in custody, failing to protect him from harm.

123.    The misconduct described in this cause of action was undertaken with deliberate indifference, malice, willfulness, or reckless indifference to the rights of Mr. Johnson and others, and was objectively unreasonable.

124.    Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders's misconduct directly and proximately caused Mr. Johnson to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

125.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to protect Mr. Johnson in the following ways:

a.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, and Sanders knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband weapons at Donaldson, which they used to stab and injure Mr. Johnson.

c.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years

preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendants nevertheless allow prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.  this knowledge.

f.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner B from gaining access

to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

g.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapons.

h.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020, respectively.

## COUNT III —EIGHT AND FOURTEENTH AMENDMENT STATE-CREATED DANGER

### [42 U.S.C § 1983]

### (Against Defendants Dunn, Givens, Morgan, and Smith)

126.      Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

127.      Pursuant to the Eighth and Fourteenth Amendments of the United States Constitution, Mr. Johnson is entitled to be free from a known and substantial risk of serious harm while in the custody of the State, including from a State-created danger.

128.      However, in violation of Mr. Johnson's Eighth and Fourteenth Amendment rights, Defendants Dunn, Givens, Morgan, and Smith—through their acts and omissions—knowingly created an environment that posed a substantial risk that Mr. Johnson would be seriously harmed while in custody.

129.      Defendants Dunn, Givens, Morgan, and Smith, acting individually and in concert with other Defendants, knew of and consciously disregarded the substantial risk that Mr.

Johnson would be seriously harmed while in custody, and limited Mr. Johnson's ability to care for himself while in custody.

130.    Defendants Dunn, Givens, Morgan, and Smith, acting individually and in concert with other Defendants, failed to protect Mr. Johnson from a substantial risk of harm and limited his ability to care for himself in custody by:

a.    failing to implement and enforce sufficient screening and inspection protocols for contraband, such as contraband weapons;

b.    failing to restrict prisoner movement within their own blocks and between blocks or other areas;

c.    failing to implement procedures to alleviate or mitigate the overcrowding of prisoners.

d.    failing to implement procedures that prevented prisoners from gaining access to other prisoners, who were restrained and attending therapy sessions;

e.    failing to provide adequate staffing levels and training for correctional officers;

f.    failing to adequately punish violent conduct by prisoners in order to discourage further incidents of violence; and

g.    failing to ensure that correctional officers followed policies and procedures put in place to ensure prisoner safety—to the extent that such policies and procedures existed.

131.    These acts and omissions gave rise to a state-created danger in the N Dorm and V Block at Donaldson, which directly and proximately caused Mr. Johnson to be subjected to a

substantial risk of serious harm.  As a result, Mr. Johnson suffered horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

132.     The misconduct described in this cause of action was undertaken with deliberate indifference, malice, willfulness, and reckless indifference to the rights of prisoners such as Mr. Johnson and was objectively unreasonable.

## COUNT IV — EIGHTH AMENDMENT FAILURE TO INTERVENE

### [42 U.S.C § 1983]

(Against Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, **Stevenson, Hugh, Jenkinson,** and Sanders)

133.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

134.     Pursuant to the Eighth Amendment of the United States Constitution, Mr. Johnson is entitled to be free from a substantial risk of serious harm while in the custody of the State.

135.     Protection from violence is one of the necessities of life that the State must provide prisoners under the Eighth Amendment.

136.     A constitutional duty of care arises when an individual's liberty has been restrained through the state's affirmative exercise of power over him, rendering unable to care for himself.

137.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders, acting individually and in concert with each other, failed to intervene to protect Mr. Johnson.

138.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of and consciously disregarded the substantial risk

that Mr. Johnson would be seriously harmed while in custody, failing to intervene to protect him from harm.

139.     The misconduct described in this cause of action was undertaken with deliberate indifference, malice, willfulness, or reckless indifference to the rights of Mr. Johnson and others, and was objectively unreasonable.

140.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders's misconduct directly and proximately caused Mr. Johnson to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

141.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to intervene to protect Mr. Johnson in the following ways:

a.       Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson

while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendants nevertheless allow prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

f.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner B from gaining access to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

g.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapons.

h.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020, respectively.

i.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders had notice that Mr. Johnson was at a substantial risk of serious harm, and had an opportunity to intervene to protect Mr. Johnson from

further serious harm.  However, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to reasonable steps to prevent further serious harm to Mr. Johnson

j.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders's failures were objectively unreasonable, were undertaken intentionally and with willful indifference to Mr. Johnson's constitutional rights, and/or beyond their authority.

k.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders had notice that Mr. Johnson was at a substantial risk of serious harm, and had an opportunity to intervene to protect Mr. Johnson from further serious harm.  However, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to reasonable steps to prevent further serious harm to Mr. Johnson.

## COUNT V — CONSPIRACY TO VIOLATE THE EIGHTH AND FOURTEENTH AMENDMENTS

### [42 U.S.C § 1983]

### (Against All Defendants)

142.      Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

143.      Defendants and other co-conspirators not yet known to Mr. Johnson acted in concert with one another to accomplish an unlawful purpose by unlawful means.

144.      Defendants Dunn, Givens, Morgan, and Smith acted in concert to deprive Mr. Johnson of his right to be free from unreasonable harm and failed to intervene to prevent harm from occurring to Mr. Johnson, in violation of Mr. Johnson's constitutional rights, by jointly failing to adopt safer policies and procedures in response to the epidemic of violence at Donaldson,

jointly failing to address the chronic understaffing and overpopulation issues at Donaldson, by agreeing to house apparent danger-prone prisoners together, and by jointly failing to address correctional officers' safety and security failings.

145.     In furtherance of this conspiracy, Defendants Dunn, Givens, Smith, and Morgan committed overt acts and were otherwise participants in joint activity. Specifically, Defendants Dunn, Givens, Smith, and Morgan engaged in the following conduct:

a.     Defendants Dunn, Givens, Smith, and Morgan consciously disregarded the substantial risk of serious harm Mr. Johnson would face while in custody at Donaldson by:

i.     failing to prevent contraband weapons from entering or remaining in Donaldson;

ii.     failing to alleviate or mitigate the overcrowding of prisoners;

iii.     failing to address the understaffing;

iv.     failing to implement and adopt or oversee the adoption of effective security protocols;

v.     failing to institute effective prison management and training;

vi.     failing to adequately prevent unauthorized prisoner travel between cells and housing units; and

vii.     failing to adequately investigate and address prisoner-on-prisoner violence.

b.     Defendants Dunn, Givens, Morgan, and Smith also consciously disregarded the substantial risk facing Mr. Johnson by failing to adopt proper policies and procedures to address:

i.     understaffing and overcrowding;

      ii.        the prevalence of contraband weapons in Donaldson;

      iii.       inadequately trained prison personnel;

      iv.       improper housing and classification procedures; and

      v.        inadequate security protocols.

146.    Defendants Dunn, Givens, Morgan, and Smith failed to take reasonable steps to ensure that any policies or procedures they did adopt were adequately implemented (or implemented at all) at Donaldson.

147.    Defendants Dunn, Givens, Morgan, and Smith directly and proximately caused Mr. Johnson to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

148.    Likewise, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders together failed to adopt proper policies and procedures to address:

      a.       understaffing and overcrowding;

      b.       prisoners' access to contraband weapons;

      c.       inadequately trained prison personnel;

      d.       improper housing and classification procedures; and

      e.       inadequate security protocols.

149.    Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to take reasonable steps to ensure that any policies or procedures they did adopt were adequately implemented (or implemented at all) at Donaldson.

150.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders acted in concert to deprive Mr. Johnson of his right to be free from unreasonable harm and failed to intervene to prevent harm from occurring to Mr. Johnson, in violation of Mr. Johnson's constitutional rights.

151.     In furtherance of this conspiracy, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders committed overt acts and were otherwise willful participants in joint activity with conscious disregard to the substantial risk of harm to Mr. Johnson.

152.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders directly and proximately caused Mr. Johnson to be subjected to a substantial risk of serious harm and to suffer horrific physical and emotional injuries.

### COUNT VI — STATE LAW NEGLIGENCE

### (Against Defendant Dunn)

153.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

154.     Defendant Dunn had a duty of care to Mr. Johnson.

155.     Defendant Dunn owed a duty to Mr. Johnson to investigate and act to stop the widespread violence, which had been occurring at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, and about which Defendant Dunn was or through exercise of reasonable diligence should have been aware.

156.     Defendant Dunn owed a duty to Mr. Johnson to investigate and act to stop the prevalence of contraband weapons inside of Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, and about which Defendant Dunn was or through the exercise of reasonable diligence should have been aware.

157.     Defendant Dunn owed a duty to Mr. Johnson to investigate and act to stop prisoners from moving freely between areas at Donaldson, which had been occurring for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, and about which Defendant Dunn was or through the exercise of reasonable diligence should have been aware.

158.     Defendant Dunn owed a duty to Mr. Johnson to investigate and act to stop prisoners from accessing other areas of the prison, including therapy sessions, without authorization at Donaldson, which had been occurring for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson, and about which Defendant Dunn was or through the exercise of reasonable diligence should have been aware.

159.     Defendant Dunn owed a duty to Mr. Johnson to investigate and act to ensure that prisoners' cell doors remained locked in light of the history of unlocked cell doors allowing prisoners to access other areas of the Donaldson and carry out violent attacks, which had been occurring for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson, and about which Defendant Dunn was or through the exercise of reasonable diligence should have been aware.

160.     Defendant Dunn owed a duty to Mr. Johnson to develop, communicate, implement, enforce, and revise as necessary policies and practices which:

a.      prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

b.      prevent prisoners from moving freely between different areas at Donaldson, including the N Dorm and V blocks;

c.      prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments;

d.      prevent prisoners from accessing the therapy sessions of other prisoners without authorization; and

e.      require correctional officers to confirm that cell doors remained locked in accordance with applicable policies and appropriate practices.

161.    Defendant Dunn breached these duties of care.

162.    In doing so, Defendant Dunn acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.

163.    Defendant Dunn's breach of his duty of care to Mr. Johnson directly and proximately caused Mr. Johnson to suffer damages, including physical and emotional pain and suffering.

## COUNT VII — STATE LAW NEGLIGENCE

### (Against Defendants Givens, Morgan, and Smith)

164.    Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

165.    Defendants Givens, Morgan, and Smith had a duty of care to Mr. Johnson.

166.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to investigate and act to stop the widespread violence, which had been occurring at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, and about which Defendants Givens, Morgan, and Smith were or through exercise of reasonable diligence should have been aware.

167.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to investigate and act to stop the prevalence of contraband weapons and contraband inside of Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020

attacks on Mr. Johnson, and about which Defendants Givens, Morgan, and Smith were or through the exercise of reasonable diligence should have been aware.

168.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to investigate and act to stop prisoners from moving freely between areas at Donaldson, which had been occurring for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, and about which Defendants Givens, Morgan, and Smith were or through the exercise of reasonable diligence should have been aware.

169.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to investigate and act to stop prisoners from accessing other areas of the prison, including therapy sessions, without authorization at Donaldson, which had been occurring for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson, and about which Defendants Givens, Morgan, and Smith were or through the exercise of reasonable diligence should have been aware.

170.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to investigate and act to ensure that prisoners' cell doors remained locked in light of the history of unlocked cell doors allowing prisoners to access other areas of the Donaldson and carry out violent attacks, which had been occurring for years preceding Prisoner B's March 5, 2020 attack on Mr. Johnson, and about which Defendants Givens, Morgan, and Smith were or through the exercise of reasonable diligence should have been aware.

171.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to develop, communicate, implement, enforce, and revise as necessary policies and practices which:

      a.    prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

      b.    prevent prisoners from moving freely between different areas at Donaldson, including the N Dorm and V blocks;

c.      prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments;

d.      prevent prisoners from accessing the therapy sessions of other prisoners without authorization; and

e.      require correctional officers to confirm that cell doors remained locked in accordance with applicable policies and appropriate practices.

172.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to prevent Prisoner B from gaining access to Mr. Johnson while he was restrained and attending his regularly scheduled therapy session.

173.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapons;

174.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to prevent Prisoner B from gaining access to Mr. Johnson while he was restrained and attending his regularly scheduled therapy session without authorization.

175.    Defendants Givens, Morgan, and Smith owed a duty to Mr. Johnson to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from attacking and stabbing Mr. Johnson repeatedly.

176.    Defendants Givens, Morgan, and Smith each breached their duties of care.

177.    In doing so, Defendants Givens, Morgan, and Smith acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.

178.     Defendants Givens, Morgan, and Smith's breaches of their duties of care to Mr. Johnson directly and proximately caused Mr. Johnson to suffer damages, including physical and emotional pain and suffering.

## COUNT VIII — STATE LAW NEGLIGENCE

**(Against Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders)**

179.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

180.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders had a duty of care to Mr. Johnson.

181.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders owed a duty to Mr. Johnson to:

    a.     prevent the N Dorm and V Block at Donaldson from becoming "hot bays";

    b.     prevent prisoners from moving freely between different areas at Donaldson, including the N Dorm and V blocks;

    c.     prevent prisoners from obtaining, fabricating, and possessing contraband weapons including knives and other dangerous, contraband instruments;

    d.     prevent prisoners from accessing the therapy sessions of other prisoners without authorization.

182.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders owed a duty to Mr. Johnson to prevent Prisoner B from

gaining access to Mr. Johnson while he was restrained and attending his regularly scheduled therapy session.

183.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders owed a duty to Mr. Johnson to prevent Prisoner A, Prisoner B, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapon.

184.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders owed a duty to Mr. Johnson to prevent Prisoner A, Prisoner B, and the other prisoners who attacked Mr. Johnson on December 27, 2019, from attacking and stabbing Mr. Johnson repeatedly.

185.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders owed a duty to Mr. Johnson to prevent Prisoner C from gaining access to Mr. Johnson in November 2020 and stabbing him.

186.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders each breached their duties of care.

187.     In doing so, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law.

188.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders's breaches of their duties of care to Mr. Johnson directly and proximately caused Mr. Johnson to suffer damages, including physical and emotional pain and suffering.

## COUNT IX — OUTRAGE

### (Against All Defendants)

189.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

190.     Defendants' above failures were extreme and outrageous and were undertaken with malice, willfulness, and reckless indifference to Mr. Johnson's rights.

191.     Defendants' misconduct directly and proximately caused the serious emotional distress (including fear, suicidal thoughts, anxiety, and other intense emotional suffering) Mr. Johnson suffered and continues to suffer from the December 17, 2019, March 5, 2020, and November 2020 attacks.

192.     Defendant Dunn failed to protect Mr. Johnson from serious emotional distress in the following ways:

a.     Defendant Dunn knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  Defendant Dunn was aware of the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.     Defendant Dunn knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Dunn knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Dunn knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Dunn knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic and created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Dunn knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to implement policies and practices

to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.      Defendant Dunn knew that that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Dunn nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

193.    Defendant Givens failed to protect Mr. Johnson from serious emotional distress in the following ways:

a.      Defendant Givens knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  Defendant Givens was aware of the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A and Prisoner B, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Givens knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Givens knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Givens knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Givens knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic and created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Givens knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's attack on Mr. Johnson.  In spite of this

knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.      Defendant Givens knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

h.      Defendant Givens knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Givens nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Givens failed to prevent Prisoner B from gaining access to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

j.      Defendant Givens failed to prevent Prisoner A, Prisoner B, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapon.

k.      Defendant Givens failed to prevent Prisoner B from gaining access to Mr. Johnson during his regularly scheduled therapy session without authorization.

l.      Defendant Givens failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

194.    Defendant Morgan failed to protect Mr. Johnson from serious emotional distress in the following ways:

a.      Defendant Morgan knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A and Prisoner B, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Morgan knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Morgan knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Morgan knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Morgan knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that failing to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Morgan knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's attack on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.      Defendant Morgan knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to implement policies and

practices to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

h.      Defendant Morgan knew that that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Morgan nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Morgan failed to prevent Prisoner B from gaining access to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

j.      Defendant Morgan failed to prevent Prisoner A, Prisoner B, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapon.

k.      Defendant Morgan failed to prevent Prisoner B from gaining access to Mr. Johnson during his regularly scheduled therapy session without authorization.

l.      Defendant Morgan failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

195.      Defendant Smith failed to protect Mr. Johnson from serious emotional distress in the following ways:

a.      Defendant Smith knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at

Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A and Prisoner B, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Smith knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Smith knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Smith knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Smith knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that failing to do so created a dangerous

environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Smith knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's attack on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.      Defendant Smith knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

h.      Defendant Smith knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Smith nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i. Defendant Smith failed to prevent Prisoner B from gaining access to Mr. Johnson while he was attending his regularly scheduled therapy session and restrained, when Prisoner B was not scheduled to attend a therapy session at that time.

j. Defendant Smith failed to prevent Prisoner A, Prisoner B, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapon.

k. Defendant Smith failed to prevent Prisoner B from gaining access to Mr. Johnson during his regularly scheduled therapy session without authorization.

l. Defendant Smith failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

196. Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to protect Mr. Johnson from serious emotional distress in the following ways:

a. Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple

prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to

protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendants nevertheless allow prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

f.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, and the other prisoners who attacked Mr. Johnson on December 27, 2019 from gaining possession of a knife or other contraband weapon.

g.     Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

### COUNT X — WANTONNESS

### (Against All Defendants)

197.     Mr. Johnson incorporates paragraphs B 30-35, C 36-46, D 47-54, E 55-60, F 61-73, and G 74-102 of this Complaint as if fully restated here.

198.     The misconduct described in this cause of action was carried on with a reckless or conscious disregard of the rights or safety of others, and Defendants knew of the existing conditions at Donaldson at the time they acted or failed to act.

199.     Defendants knew or should have known that injury to Mr. Johnson was the likely or probable result of their misconduct, and Mr. Johnson did, in fact, suffer injuries as a result of Defendants' misconduct, including multiple stabbings and related physical injuries, suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping.

200.     Defendant Dunn acted with a reckless or conscious disregard of the rights or safety of prisoners at Donaldson, including Mr. Johnson, in the following ways:

a.     Defendant Dunn knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  Defendant Dunn was aware of monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.     Defendant Dunn knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Dunn knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Dunn knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Dunn knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that failing to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Dunn nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Dunn knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Dunn nevertheless failed to implement policies and practices

to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.     Defendant Dunn knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Dunn nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

201.     Defendant Givens acted with a reckless or conscious disregard of the rights or safety of prisoners at Donaldson, including Mr. Johnson, in the following ways:

a.     Defendant Givens knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  Defendant Givens was aware of the DOJ report.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.     Defendant Givens knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Givens knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Givens knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Givens knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that failing to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Givens knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's attack on Mr. Johnson.  In spite of this

knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.      Defendant Givens knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Givens nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

h.      Defendant Givens knew that that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendants nevertheless allow prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Givens failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapon.

j.      Defendant Givens failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

202.      Defendant Morgan acted with a reckless or conscious disregard of the rights or safety of prisoners at Donaldson, including Mr. Johnson, in the following ways:

a.      Defendant Morgan knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr.

Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A and Prisoner B, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Morgan knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Morgan knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Morgan knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.     Defendant Morgan knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and failure to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.     Defendant Morgan knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's attack on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.     Defendant Morgan knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Morgan nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

h.     Defendant Morgan knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Morgan nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Morgan failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapon.

j.      Defendant Morgan failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

203.    Defendant Smith acted with a reckless or conscious disregard of the rights or safety of prisoners at Donaldson, including Mr. Johnson, in the following ways:

a.      Defendant Smith knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson, including the monthly reports released by the ADOC reflecting the violence at Donaldson, the DOJ report, and the multiple incidents of violence at Donaldson between July 2014 and January 2020.  In spite of this knowledge, Defendant Givens nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendant Smith knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendant Smith knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding

the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendant Smith knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr. Johnson. In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendant Smith knew that keeping prisoners' cell doors locked at Donaldson was chronically problematic, and that failing to do so created a dangerous environment in which prisoners could obtain unauthorized access through unlocked doors into cells to which they were not assigned.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by caused by inadequate or inadequately enforced policies designed to ensure that prisoners' cells remained locked.

f.      Defendant Smith knew that correctional officers at Donaldson routinely leave cell doors open or unlocked after a prisoner count—a practice which had been occurring well in advance of Prisoner B's attack on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to protect Mr. Johnson from Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

g.      Defendant Smith knew of the correctional understaffing at Donaldson and that it created a substantial risk of serious harm to prisoners for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendant Smith nevertheless failed to implement policies and practices to ensure that staffing was adequate to prevent Prisoner A's attack or Prisoner B's unauthorized entry into Mr. Johnson's therapy session and the resulting attack.

h.      Defendant Smith knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendant Smith nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

i.      Defendant Smith failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapon.

j.      Defendant Smith failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

204.    Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders acted with a reckless or conscious disregard of the rights or safety of prisoners at Donaldson, including Mr. Johnson, in the following ways:

a.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of widespread violence at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on

Mr. Johnson.   In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the violence perpetrated by multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, against Mr. Johnson, which caused Mr. Johnson's injuries.

b.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of contraband at Donaldson for years preceding the December 27, 2019, March 5, 2020, and November 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, and Sanders nevertheless failed to protect Mr. Johnson from multiple prisoners, including Prisoner A, Prisoner B, and Prisoner C, accessing contraband at Donaldson, which they used to stab and injure Mr. Johnson.

c.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the N Dorm and V Block were "hot bays" heavily concentrated with violent prisoners with disciplinary problems, for years preceding the December 27, 2019 and March 5, 2020 attacks on Mr. Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by inadequate or inadequately enforced policies designed to ensure safe housing assignments.

d.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew of the prevalence of prisoners moving freely between cellblocks at Donaldson for years preceding Prisoner B's attack on Mr.

Johnson.  In spite of this knowledge, Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders nevertheless failed to protect Mr. Johnson from the substantial risk of serious harm caused by permitting Prisoner B to move from his assigned cell in the V Block so as to gain access to Mr. Johnson while he was attending his regularly scheduled therapy meeting, where Prisoner B was able to attack Mr. Johnson.

e.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders knew that the policy and practice of the ADOC is to not allow a prisoner's known enemies to come into contact with the prisoner. In spite of this knowledge, Defendants nevertheless allowed prisoners known to have conflicts with Mr. Johnson to come within close proximity to Mr. Johnson, including during meal times in the chow hall.

f.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and the other prisoners who attacked Mr. Johnson from gaining possession of a knife or other contraband weapon.

g.      Defendants Johnson, Caldwell, Rambo, Matthrew, Gaines, Cook, Sutton, Stevenson, Hugh, Jenkinson, and Sanders failed to prevent Prisoner A, Prisoner B, Prisoner C, and other prisoners from attacking and stabbing Mr. Johnson on December 27, 2019, March 5, 2020, and November 2020.

<strong>REQUEST FOR RELIEF</strong>

WHEREFORE, Plaintiff Frankie Johnson respectfully requests that this Honorable Court enter a judgment as follows:

a.      declaring that all Defendants' acts or omissions, described herein, violated the Eighth and Fourteenth Amendments to the United States Constitution;

b.      awarding compensatory damages against all Defendants jointly and severally in their individual capacity in an amount to be determined at trial;

c.      awarding punitive damages against all Defendants in their individual capacity in an amount to be determined at trial;

d.      awarding reasonable costs and attorneys' fees, including fees in accordance with 42 U.S.C. § 1988 and any other applicable law;

e.      awarding pre- and post-judgment interest as allowed by law; and

f.      any other relief this Court deems just and proper.

## JURY DEMAND

Plaintiff Frankie Johnson hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated:  December 27, 2021                   Respectfully submitted,

BY**:** /s/ Jamila S. Mensah_____
  *Counsel of Record for Plaintiff*

BY**:** /s/ Anil Mujumdar_____

*Local Counsel*

**NORTON ROSE FULBRIGHT US LLP**
*Jamila S. Mensah (pro hac vice application forthcoming)
1301 McKinney, Suite 5100
Houston, Texas, 77010-3095
T: 312-243-5900
F: 312-243-5902
E: jamila.mensah@nortonrosefulbright.com
*Counsel of Record

Nandini Rao (pro hac vice application forthcoming)
1301 Avenue of the Americas
New York, New York  10019-6022
T: 212-318-3046
F: 212-318-3400
E: nandini.rao@nortonrosefulbright.com

**DAGNEY JOHNSON LAW GROUP**
Anil A. Mujumdar (ASB-2004-L65M)
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com