IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **FRANKIE JOHNSON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No. 2:21-cv-01701-AMM-SGC |
| | ) |
| **JEFFERSON DUNN,** *et al.*, | ) OPPOSED |
| | ) |
| **Defendants.** | ) |

**JEFFERSON DUNN'S MOTION FOR LEAVE TO FILE A
MOTION TO COMPEL PLAINTIFF'S DISCOVERY RESPONSES**

Pursuant to this Court's initial order (doc. no. 156), Jefferson Dunn ("Dunn") hereby moves this Court for leave to file a motion to compel interrogatory answers and document production from Frankie Johnson ("Plaintiff"). In support of this Motion, Dunn states as follows:

### INTRODUCTION

1.  Discovery began in this case on July 19, 2024, upon entry of this Court's Scheduling Order. (Doc. 160). Prior to discovery commencing, during the Parties Rule 26(f) parties' planning meeting, counsel for Dunn informed Plaintiff of the need to subpoena the Alabama Department of Corrections ("ADOC") for documents and information maintained by ADOC, since Dunn and the other named defendants in their individual capacities as current and former ADOC employees lacked possession, custody, or control over ADOC documents. Dunn propounded

his First Interrogatories (the "Interrogatories" attached here as **Exhibit A**) and served his First Requests for Production (the "Requests," attached here as **Exhibit B** and collectively with the Interrogatories, "Written Discovery") on August 16, 2024.

2. Plaintiff requested extensions to respond to Dunn's Written Discovery on two separate occasions, requesting ninety additional days to provide responses. Dunn afforded Plaintiff additional time to respond to the Written Discovery with the understanding Plaintiff would provide substantive answers to the Interrogatories and produce documents in Plaintiff's possession, custody, or control. Despite Dunn allowing Plaintiff months of additional time to substantively respond to the Written Discovery, Plaintiff did not substantively respond but instead asserted frivolous objections and inappropriate claims of privilege.

3. Specifically, Plaintiff refused to produce documents related to his mental health treatment—claiming psychotherapist privilege, medical records before and after the events alleged in his complaint—claiming a lack of relevance. To date, Plaintiff produced a limited number of documents responsive to the Requests, consisting of the documents produced by the Alabama Department of Corrections ("ADOC") to Plaintiff. Plaintiff has not disclaimed possession, custody, or control of documents responsive to the Requests, although Plaintiff has not demonstrated any attempt over the past seven months to search for responsive

2

documents in accordance with Rule 34 of the Federal Rules of Civil Procedure. Even now, near the end of discovery, Plaintiff's counsel contends they need additional time to confer with Plaintiff about the existence and location of documents responsive to Dunn's Requests.

4. Plaintiff failed to provide adequate answers to the Interrogatories. For example, in response to Interrogatory No. 5, Dunn requested Plaintiff "list all drugs (including illegal substances), medications, and supplements whether or not prescribed, over the counter, or otherwise obtained, that [he] took from December 1, 2016, to present…" Plaintiff responded by objecting to answering, citing psychotherapist privilege, relevance, and Dunn's purported access to the information. Additionally, Plaintiff contends that he will provide, "documents in response to Request for Production Nos. 3 and 5 from which [Dunn] can identify any medications received during treatment of Plaintiff's injuries resulting from the incidents made the basis of this suit in accordance with Federal Rule of Civil Procedure 33(d)." Of course, Plaintiff failed to produce any documents, and even if Plaintiff produced the documents referenced in response to Interrogatory No. 5, Plaintiff's response remains inadequate because the answer to Interrogatory No. 5 cannot be determined by reference to ADOC's (and not Plaintiff's) limited business records. Fed. R. Civ. P. 33(d). By way of example, Plaintiff's medical file during his incarceration with ADOC will not include illegal substances taken by Plaintiff.

5.      Additionally, Plaintiff claims in response to Dunn's Interrogatory No. 9, seeking Plaintiff's institutional history of disciplinary action, solely on the basis that Plaintiff believes his disciplinary history "is and should be irrelevant." Multiple incidents which serve as the basis for Plaintiff's claims involve misconduct by Plaintiff which contributed, and arguably caused the incidents.  Clearly, Plaintiff's history of engaging in similar behavior as well as engaging in violent incidents in violation of ADOC policy remains relevant to Dunn's defenses in this matter and the issue of causation.  Moreover, Federal Rule of Civil Procedure 26(b)(1) makes clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense," and "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  It remains well settled in the Eleventh Circuit that "[r]elevance in the context of discovery 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Marbury v. Warden, No. 22-10916, 2022 WL 17175549, at *2 (11th Cir. Nov. 23, 2022) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)).  On multiple occasions, Plaintiff inappropriately responds to Dunn's Written Discovery stating the information sought lacks relevance but omits information sufficient for Dunn to assess this claim.  Plaintiff's insistence on withholding relevant information

remains inappropriate and in violation of Plaintiff's discovery obligations under the Federal Rules of Civil Procedure.

6.   The Parties conducted a meet-and-confer on April 2, 2025, to discuss Dunn's disputes with Plaintiff's responses. Subsequently, the Parties exchanged several rounds of emails discussing remaining disputes. Plaintiff agreed to provide amended responses and produce additional responsive documents by May 1, 2025. Although Plaintiff served Amended Responses to Dunn's Written Discovery, Plaintiff failed to produce any additional responsive documents, despite representing he would do so. Moreover, Plaintiff's Amended Responses fail to resolve the remaining deficiencies identified by Dunn.

7.   Despite the Parties repeated meetings, email correspondence related to discovery disputes, and exchange of Amended Responses, the Parties remain at impasse regarding many of their discovery disputes. Considering the Parties inability to resolve discovery disputes and the looming discovery deadline of June 13, pursuant to this Court's order (doc. no. 156 at 9-10), Dunn seeks leave of this Court to file a motion to compel Plaintiff's complete answers to Dunn's Interrogatories and production of all documents (including ESI) and things in Plaintiffs' possession, custody, or control.

8. Counsel for Dunn conferred with Plaintiff's counsel prior to filing of this motion and Plaintiff opposes Dunn's Motion for Leave to File Motion to Compel Plaintiff's discovery responses and document production.

## ARGUMENT

### I. The psychotherapist privilege does not apply to the discovery Dunn seeks.

9. The psychotherapist privilege exists to protect the disclosure of "***communications***" between a therapist and client. See Jaffe v. Redmond, 518 U.S. 1, 15, 116 S. Ct. 1923, 1932 (1996) (holding confidential communications between psychotherapist patient during diagnosis or treatment are protected from disclosure). However, the Supreme Court did not extend the protection of psychotherapist privileges to documents and information concerning a patient's diagnoses, treatments, symptoms, or other information related to a patient's medical or mental health care. Dunn's Written Discovery does not seek specific communications between Plaintiff and his licensed psychotherapist. For example, Request for Production No. 3 seeks, "[c]opies of any and all of your medical and/or mental health records from December 1, 2016, to present." (Ex. B at 8) (See also Ex. A at 8-9, seeking information regarding Plaintiff's history of drugs, medication, and supplements). The psychotherapist privilege applies "***only*** to confidential communications between a psychiatrist, psychologist or licensed mental health counselor and her patient in the course of diagnosis and treatment or in the course of

6

psychotherapy." Jane Student 1 v. Williams, 206 F.R.D. 306, 310 (N.D. Ala. 2002) (citing Jaffe v. Redmond, 518 U.S. 1, 15 (1996). Neither of the queries described above invade the psychotherapist privilege as Plaintiff's routine mental health records of treatment and any medication received do not represent communications protected under the privilege.

10. Furthermore, like attorney-client privilege or spousal privilege, the psychotherapist privilege is not an inviolable shield from discovery. While the Eleventh Circuit has not directly addressed the waiver of psychotherapist privilege, other circuits and district courts in the Eleventh Circuit routinely hold that a plaintiff waives his right to the psychotherapist privilege by making his mental health condition an issue in the case. Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 556 (N.D. Ga 2001). Plaintiff did so in the present case. In his Second Amended Complaint, Plaintiff claims he suffers from "horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping" (doc. no. 119 at 41, ¶ 170). Jane Student 1, 206 F.R.D. at 557 (holding plaintiff's mental health condition placed in controversy by asserting an intentional infliction of emotional distress claim). And, Plaintiff seeks to recover punitive damages from Dunn based upon his alleged "emotional pain and suffering." (Doc. No. 119 at 49 ¶¶ 203-4).

11. Additionally, multiple incidents serving as the basis for Plaintiff's claims occurred in the mental health housing units at Donaldson Correctional Facility where ADOC housed Plaintiff at the time. Clearly, Plaintiff's mental health status, treatment, diagnosis, and medication remain relevant to Plaintiff's mental health condition before and after the incidents alleged in Plaintiff's Second Amended Complaint and bear directly on Dunn's defenses and the jury's award of damages, if any, at trial. If any psychotherapist privilege existed to protect Plaintiff's mental health records, Plaintiff waived the privilege by making his mental health a critical component of his lawsuit.

## II. Plaintiff's relevance objections remain entirely improper under the Eleventh Circuit precedent regarding the scope of discovery.

12. The scope of discovery remains well established both pursuant to the Federal Rules of Civil Procedure and Eleventh Circuit precedent. As noted above—"parties may obtain discovery regarding any nonprivileged matter that is relevant to any part's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevance should be construed broadly, allowing for the discovery of any matter which "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc., v. Sanders, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L. Ed. 2d 253 (1978). Indeed, a liberal reading of discovery extends so far that

"a court should permit discovery even when the relevance of the requested material is in doubt." Coker v. Duke & Co., Inc., 177 F.R.D. 682, 685 (M.D. Ala. 1998).

13. In this case, Dunn's Written Discovery remains undoubtedly relevant. For example, Plaintiff objects to the relevance of medical records aside from those directly related to the alleged assaults. (**Exhibit C**, Plaintiff's Third Amended Responses to Dunn's Request No. 4). However, Plaintiff's physical and mental condition before his alleged "horrific physical injuries" remains entirely probative in light of his claims in this case. (Doc. No. 119 at 41, ¶ 170). Again, Plaintiff's allegations put his physical and mental conditions, including his past and present physical and mental conditions at issue in this case. Plaintiff's objection that this Request or the other Requests do not seek relevant information lacks merit.

**III. Plaintiff's failure to properly respond to Dunn's Written Discovery violates the Federal Rules of Civil Procedure and prevents Dunn from completing discovery.**

14. Plaintiff's responses to Dunn's Written Discovery remain wholly inadequate. Plaintiff's responses make it unclear what, if any, discovery remains outstanding. For example, in response to Request No. 6, Plaintiff states that he will, "search for responsive non-privileged documents in his possession, custody, or control." (**Exhibit C**, No. 6). However, Dunn allowed Plaintiff almost seven months to respond to his Written Discovery. Either Plaintiff has not conducted a reasonable search, and therefore, failed to comply with deadlines repeatedly

9

extended, or Plaintiff continues to withhold documents responsive to Dunn's Requests despite lapsed deadlines. Regardless, Dunn cannot complete discovery because he cannot determine if Plaintiff actually fulfilled his discovery obligations. While Dunn understands the continuing nature of supplementing discovery, Plaintiff's failure to produce anymore documents (aside from those documents ADOC produced to him) and continued representation that he will conduct a reasonable search for responsive documents at some unknown time in the future leaves Dunn's discovery in limbo as opposed to complete.

15. Plaintiff responds similarly to Request No. 6 to ten more of Dunn's Requests, and states that Plaintiff "will produce" documents responsive to seven more of Dunn's Requests. It remains unclear what if anything Plaintiff actually intends to produce in response to Dunn's Requests.

16. Plaintiff's Interrogatory answers, likewise, remain deficient. As discussed in the example above, Plaintiff attempts to avoid fully responding to Interrogatory No. 5, citing Rule 33(d) of the <u>Federal Rules of Civil Procedure</u>. However, Rule 33(d) does not allow for Plaintiff to dodge a question by citing to, as of yet, unproduced documents—especially considering that, even when produced, the documents offered by Plaintiff do not fully answer the Interrogatory.

17. Plaintiff's Interrogatory evasive, non-responsive answers serve only to delay this litigation and demonstrate the lack of any good-faith basis or facts to

support his claims or the filing of his pleading  Despite Dunn providing Plaintiff months-worth of extensions and repeatedly meeting and conferring with Plaintiff's counsel with promises of substantive answers to the Interrogatories and production of documents (including ESI) and things in Plaintiff's possession, custody, or control, Plaintiff broke his promises, ignored his discovery obligations, asserted frivolous objections, and pursued a course of conduct to delay discovery of the unmeritorious nature of his claims.  If, as it appears, Plaintiff lacks any documents supporting his claims or responsive to the Requests and lacks any information supporting his claim or responsive to the Interrogatories (including, curiously, information relevant to and within his own head), then he can just say so and the Court can dismiss Dunn from this case.

## CONCLUSION

Plaintiff failed to meet his discovery obligations, despite numerous opportunities from Dunn to do so.  Indeed, Dunn afforded Plaintiff nearly the entire discovery period to provide Dunn basic documents and information about his claims in this case.  However, after his extraordinary delay, Plaintiff refused to respond to Dunn's Written Discovery adequately or appropriately, hiding behind frivolous objections.  Now, with the discovery deadline looming, Dunn requests this Court grant him to leave to file a motion to compel so that he can (1) obtain necessary and appropriate discovery ahead of the June 13 deadline (or confirm Plaintiff lacks

documents and information supporting his claims) and (2) demonstrate the unmeritorious nature of Plaintiff's claims against him.

Dated: May 8, 2025.

/s/ William J. Cranford
William J. Cranford
*One of the Attorneys for Jefferson Dunn*

William R. Lunsford
Matthew B. Reeves
William J. Cranford, III
**BUTLER SNOW LLP**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com
will.cranford@butlersnow.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all parties in this matter, including without limitation the following, by the Court's CM/ECF system or by U.S. Mail on this 8th day of May 2025:

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2120 1st Avenue North
Birmingham, AL 35203
Telephone: (205) 410-1185
Facsimile: (205) 419-9701
anil@dagneylaw.com

Gary Y. Gould
Jamila S. Mensah *(pro hac vice)*
Kelly Potter *(pro hac vice)*
**NORTON ROSE FULBRIGHT US, LLP**
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
gary.gould@nortonrosefulbright.com
jamila.mensah@nortonrosefulbright.com
kelly.potter@nortonrosefulbright.com

*Attorneys for Plaintiff*

Tara S. Hetzel
Vania Latitia Hosea
**ALABAMA OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130
Telephone: (334) 242-7997
Facsimile: (334) 353-8440
tara.hetzel@alabamaag.gov
vania.hosea@alabamaag.gov

*Attorneys for Gwendolyn Givens, Phyllis Morgan, Vencini Smith, Reginald Rambo, Trenton Matthews, Warren Cook, Justin Stevenson, and Erich Hugh*

Terri O. Tompkins
Christian A. Montgomery
Rosen Harwood
2200 Jack Warner Parkway, Suite 200
Tuscaloosa, AL 35401
Telephone: (205) 344-5000
Facsimile: (205) 758-8358
ttompkins@rosenharwood.com
amontgomery@rosenharwood.com

*Attorneys for Deaundra Johnson*

*William J. Cranford*
Of Counsel