FILED
2025 May-12 PM 04:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **FRANKIE JOHNSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 2:21-CV-01701-AMM-SGC** |
| ) | |
| **JEFFERSON DUNN**, *et al.*, ) | **OPPOSED** |
| ) | |
| **Defendants.** ) | |

## JEFFERSON DUNN'S OPPOSED MOTION TO COMPEL

Pursuant to <u>Federal Rule of Civil Procedure</u> 37 and this Court's Order (doc. 179), Defendant Jefferson Dunn ("<u>Dunn</u>") moves this Court to compel Plaintiff Frankie Johnson ("<u>Plaintiff</u>") to provide full and complete responses to Dunn's First Set of Interrogatories (the "Interrogatories, attached hereto as **Exhibit A[1]**) and First Requests for Production (the "<u>Requests</u>," attached hereto as **Exhibit B**, and together with the Interrogatories, the "<u>Written Requests</u>"). Despite two extensions, seven months of elapsed time, and extensive Rule 37 correspondence and resolution attempts, Plaintiff failed to cure material deficiencies, continues to assert improper objections and blanket privilege claims, and failed to produce responsive documents. **Good cause exists for the Court to compel production.** Pursuant to this Court's

---

[1] Pursuant to the Court's Protective Order (doc. 166) and out of an abundance of caution, Dunn redacted potentially protected personal health information, the personally identifiable information of current and former inmates, and the personally identifiable information of Plaintiff's relatives in Dunn's attached exhibits.

Initial Order (doc. 156), Dunn conferred in good faith with Plaintiff in an attempt to resolve the discovery disputes raised in this Motion before filing it, but the Parties could not resolve these discovery disputes. For the reasons identified below, Dunn respectfully requests this Court enter an order compelling Plaintiff to fully respond to Dunn's Interrogatories and produce all documents responsive to Dunn's Requests.

<u>**RELEVANT FACTUAL AND PROCEDURAL HISTORY**</u>

Discovery began in this case on July 19, 2024, upon entry of the Court's Scheduling Order. (Doc. 160). Dunn properly served the Written Discovery on **August 16, 2024**, requesting Plaintiff to produce documents and information related to Plaintiffs' claims and Dunn's defenses in this action.

Plaintiff requested extensions to respond to Dunn's Written Discovery on two separate occasions. Dunn afforded Plaintiff a total of ninety days to respond to the Written Discovery with the understanding that Plaintiff would provide substantive answers to the Interrogatories and production of documents in Plaintiff's possession, custody, or control. Despite Dunn allowing Plaintiff months of additional time to substantively respond to the Written Discovery, Plaintiff failed to substantively respond but instead asserted frivolous objections and inappropriate claims of privilege. Plaintiff served unsigned deficient responses on November 8, 2024. (Plaintiff's Responses to the Written Discovery attached hereto as **EXHIBIT C**).

On March 19, 2025, Dunn served Plaintiff with Rule 37 correspondence

identifying deficiencies in Plaintiff's responses to the Written Discovery. Eight days later—March 27, 2025), Plaintiff requested a meet and confer to discuss Dunn's Rule 37 correspondence; on April 2, 2025, counsel for Dunn and Plaintiff conferred in an attempt to reach a resolution of the discovery disputes. During the April 2, 2025, meet and confer, Dunn addressed each Request and Interrogatory and provided Plaintiff a specific explanation of the deficiencies in Plaintiff's responses. At the conclusion of the April 2, 2025, meet and confer, Plaintiff agreed to provide responsive documents by May 1, 2025, and to provide amended responses to the Written Discovery by April 14, 2025.

Two days after the meet and confer—April 4, 2025, Dunn recounted the agreements and understandings reached by the Parties and the nearly month-long period for Plaintiff to produce documents and provide substantive answers to the Interrogatories. Plaintiff responded generally agreeing with Dunn's summary of the meet and confer, providing clarification as to Plaintiff's positions. (See April 4, 2024, Correspondence attached hereto as **EXHIBIT D**). Plaintiff provided a non-specific privilege log to Dunn on April 12, 2025. (Plaintiff's Privilege Log attached hereto as **EXHIBIT E**).

Plaintiff served unsigned Amended Interrogatory Responses on April 9, 2025, and Amended Responses to Dunn's Requests for Production at the same time. Contrary to the Parties agreements and understanding after the April 2, 2025, meet

3

and confer, Plaintiff's amended responses to Dunn's Written Discovery failed to resolve Plaintiff's deficient responses to the Written Discovery.  Accordingly, on April 14, 2025, Dunn sent Plaintiff additional Rule 37 correspondence, identifying the continuing deficiencies in Plaintiff's responses to the Written Discovery and inadequate document production.  But Plaintiff reponed on April 16, 2025, by maintaining his unmeritorious objections, including his claims of privilege.

After several rounds of communications concerning Plaintiff's objections and responses to the Written Discovery and inadequate production over multiple weeks, Plaintiff served his Second Amended Responses and Objections to Jefferson Dunn's First Set of Interrogatories (the "Amended Responses to Interrogatories" attached hereto as **EXHIBIT F**) and Third Amended Responses to Jefferson Dunn's First Requests for Production (the "Amended Responses to RFPs" attached hereto as **EXHIBIT G** and, together with the Amended Responses to Interrogatories, the "Amended Discovery Responses") on May 2, 2025.  Notwithstanding the numerous communications and promises by Plaintiff to reconsider or withdraw his unmeritorious objections, to produced documents (including electronically stored information ("ESI")) and things in his possession, custody, and control responsive to the Requests, and to fully and completely answer the Interrogatories, Plaintiff's Amended Discovery Responses remain deficient, and those communications appear calculated to delay Dunn's discovery of the fact that Plaintiff lacks evidence to

support his claims against Dunn.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26(b)(1) allows discovery of "any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). Moreover, "[i]nformation within th[e] scope of discovery need not be admissible in evidence to be discoverable." Id. Eleventh Circuit precedent makes clear that "[r]elevance in the context of discovery 'has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.'" Marbury v. Warden, No. 22-10916, 2022 WL 17175549, at *2 (11th Cir. Nov. 23, 2022) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). Fed. R. Evid. 401 explains that evidence is relevant if it has "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Courts consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit," in determining whether information sought in discovery is "proportional to the needs of the case." Id. The Federal Rules of Civil Procedure strongly favor full discovery whenever possible. Oirya v. Mando

5

Am. Corp., No. 3:19-cv-00635, 2020 WL 12991580, at *2 (M.D. Ala. Dec. 18, 2020).

Additionally, "[a] variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Id.  For example, "[i]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."  Fed. R. Civ. P. 26(b)(1) advisory notes to the 2000 amendments. Furthermore, "[w]hen discovery appears relevant on its face, the party resisting the discovery has the burden to establish facts justifying its objections by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1) or (2) is of such marginal relevance that the potential harm…outweighs[s] the ordinary presumption in favor of broad disclosure." Oirya, 2020 WL 12991580, at *2.  Ultimately, the question of whether material is "'relevant' for discovery purposes" is "a fact specific inquiry…[and the court has] a broad range of discretion to determine relevance." Smith v. Trustmark Nat'l Bank, No. 2:22-cv-330, 2024 WL 2401797, at *1 (M.D. Ala. May 22, 2024). Because the Federal Rules of Civil Procedure favor full discovery, "'a civil litigant is generally entitled to any information sought if it appears reasonably calculated to lead to the discovery of admissible evidence.'"  Id. (quoting Akridge v. Alfa Mut. Ins. Co., 1 F. 4th 1271, 1276 (11th Cir. 2021).

Generally, a party "may move for an order compelling disclosure or discovery." Fed. R. Civ. P. 37(a)(1). "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection" if "a party fails to answer an interrogatory under Rule 33; or a party fails to produce documents…as requested under Rule 34." Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). "An incomplete disclosure, answer or response to a discovery request is treated as a failure to disclose, answer, or respond." Id. At *2. District courts possess broad discretion under Fed. R. Civ. P. 26 to compel discovery. Sanderlin v. Seminole Tribe of Fla., 243 F.3d 1282, 1285 (11th Cir. 2001).

## ARGUMENT

### I. PLAINTIFF'S AMENDED DISCOVERY RESPONSES REMAIN DEFICIENT.

Plaintiff's Amended Discovery Responses suffer from several deficiencies.[2] First, Plaintiff asserts entirely improper relevance objections grounded in a narrow, self-serving interpretation of the claims and defenses in this case, and the scope of discovery under the Federal Rules of Civil Procedure. Second, Plaintiff asserts broad, inapplicable privilege objections. And, lastly, Plaintiff fails to properly respond to Dunn's Written Discovery—ignoring large portions of Dunn's Written Discovery altogether to delay or prevent Dunn from completing necessary, relevant

---

[2] For the Court's ease of reference Dunn attached hereto as **EXHIBIT I** – Appendix 1 Summary of Discovery Disputes which provides a clear accounting of each deficiency related to specific individual Amended Discovery Responses provided by Plaintiff.

discovery.  For the reasons discussed below, the Court should order Plaintiff to withdraw his baseless objections and claims of privilege, provide complete answers to Dunn's Interrogatories, and produce all responsive documents (including ESI) and things sought by Dunn's Requests.

### A.    Plaintiff's relevance objections should be overruled.

Dunn "may obtain discovery regarding any nonprivileged matter that is relevant to any part's claim or defense." Fed. R. Civ. P. 26(b)(1).  In terms of Dunn's Written Discovery, those discovery requests must be construed broadly, allowing for the discovery of any matter that "bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc., v. Sanders, 437 U.S. 340 (1978).  Dunn's Written Discovery seeks relevant documents and information from Plaintiff.

A "party resisting discovery must show specifically how…each [discovery request] is not relevant or how each question is overly broad, burdensome or oppressive." Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985).  Stated differently, "[t]o be adequate, objections…should be 'plain enough and specific enough so that the court can understand in what way the [discovery requests] are alleged to be objectionable.'" Id. (quoting Davis v. Fendler, 650 F.2d 1154, 1160 (9th Cir. 1981)).  "The mere statement by a party that the [discovery request] was 'overly broad, burdensome, oppressive and irrelevant' is not adequate

to voice a successful objection to [a discovery request].  Id. (quoting Johnson v. Harris Corp., 677 F.2d 985, 992 (3rd Cir. 1982).  Boilerplate objections, "without more, 'are inadequate and tantamount to not making any objection at all.'"  Boler v. Bank of Am., N.A., No. 2:17-cv-00303, 2018 WL 7142093, at *1 (N.D. Ala. Oct. 1, 2018) (citing Sherwin Williams Co. v. JB Collision Servs. Inc., No. 13-cv-1946, 2014 WL 3388871, at *2 (S.D. Cal. July 9, 2014)).  Plaintiff's objections on relevance grounds amount to nothing more than "blanket and conclusory recitations of discovery objections." Id. at *4.

Plaintiff asserted improper relevance objections to Dunn's Interrogatories 5, 6, 7, 8, 9, 11, and 13 and Dunn's Requests 8, 9, 10, 15, 18, 29, and 36.  However, Plaintiff lacks any basis to support his relevance objections.  Contrary to the Plaintiff's assertions about his broad affirmative discovery to ADOC and its current and former employees, when responding to Dunn's Written Discovery, Plaintiff becomes forgetful, arguing for a remarkably narrow interpretation his claims and ignoring Dunn's defenses—characterizing clearly relevant discovery as "not relevant to, or probative of, any claim or defense asserted in this case, and outside the scope of discovery." [Ex. F at 11-16; Ex. G at 12-13, 18-21, 29, 34].  Of course, Plaintiff does not specify the basis for this boilerplate relevance objection.  Id.

Even a cursory review of Dunn's Written Discovery demonstrates Dunn seeks plainly relevant documents (including ESI) and information.  (See Exs. A and B).

As an example, in response to Requests No. 3-5, Plaintiff objects to the production of healthcare-related (medical and mental health) records outside the limited medical records associated with the three inmate-on-inmate altercations underlying Plaintiff's claims. (Ex. G at 7-10). But Plaintiff's physical and mental condition, including any medical and mental health records concerning his physical and mental condition, before and after his purported "horrific physical injuries" remains probative of Plaintiff's claims and Dunn's defenses. (Doc. 119 at 41, ¶ 170). By seeking monetary damages for physical injuries and emotional distress accompanying three inmate-on-inmate altercations, Plaintiff put his physical and mental condition, along with documents and information about his physical and mental condition, at issue. (Doc. 119 ¶¶ 104, 158, 170, 181, 194, 204, 214) (alleging Plaintiff "suffer[ed] horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping" and seeking "damages" for "physical and emotional pain and suffering). Plaintiff's relevance objections to Interrogatories 5, 6, 7, 8, 9, 11, and 13 and Requests 8, 9, 10, 15, 18, 29, and 36 lack merit.

For documents withheld as irrelevant, Plaintiff's privilege log provides no assistance. Multiple entries in Plaintiff's privilege log state simply "Withheld – Not Relevant," lacking any additional information aside from the vague statement "[d]ocument containing plaintiff's non-responsive medical records." (Ex. E at 2).

In fact, Plaintiff withheld at least six documents consisting of one-hundred and twelve pages on this basis alone. (Id.). Neither the Court nor Dunn can fully assess the validity of Plaintiff's generic, boilerplate objections from the Amended Discovery Responses, or as to the Amended Responses to RFPs, from the privilege log because it fails to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that … will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii).

Plaintiff cannot apply one standard of relevance to Dunn's Written Discovery while applying a much broader and less restrained standard to his own. In his First Requests for Production to Dunn (attached hereto as **EXHIBIT H**), Plaintiff seeks a wide range of documents—many without any temporal limitation or connection to the three inmate-on-inmate altercations, his own claims, or Dunn's defenses. (See Ex. H, Request Nos. 5, 6, 10–22, 28–41, 44, 46–49). For example, Plaintiff broadly requests "[a]ll documents produced by ADOC, any of the defendants, or any other party or non-party in connection with any other civil or criminal litigation or administrative proceeding concerning Donaldson Safety issues." (Id. at 16). Plaintiff's sweeping document request encompasses documents predating Dunn's (and other parties') tenure and wholly unrelated to Plaintiff—dating back to the opening of Donaldson in October 1982 and vastly broader than the specific inmate-on-inmate altercations involving Plaintiff or inmate-on-inmate altercations generally

11

in light of Plaintiff's definition of "Donaldson Safety issues." Yet, when responding to Dunn's narrowly tailored and facially relevant discovery, Plaintiff asserts boilerplate objections and unjustifiably narrow views of relevance.

Plaintiff's inconsistent approach to discovery lacks support in the rules but rather reflects a selective and self-serving application of discovery standards. The Court should reject this asymmetry. Dunn's Written Discovery is relevant to liability, causation, and damages under Fed. R. Civ. P. 26(b)(1). Dunn therefore asks the Court to overrule Plaintiff's relevancy objections in the Amended Discovery Responses, requiring complete answers to Dunn's Interrogatories 5, 6, 7, 8, 9, 11, and 13 and produce documents (including ESI) and things responsive to Dunn's Requests 8, 9, 10, 15, 18, 29, and 36 in Plaintiff's possession, custody, or control.

## B.    Plaintiff's privilege objections should be overruled.

Plaintiff objects on the basis of privilege to nearly all of Dunn's Written Discovery but fails to comply with Fed. R. Civ. P. 26(b)(5)(A)(ii). Plaintiff repeats formulaic objects to Dunn's Requests 1-5, 7, 9-13, 16, 19-20, 22, 24, 27, 28, 31, 33, 34, and 35, stating "to the extent it calls for the disclosure of information that is subject to the attorney-client privilege, the work product doctrine, community of interest privilege, joint defense privilege, or any other legally recognized privilege, protection, immunity, or exemption from discovery." (See Ex. G). Plaintiff makes a similar boilerplate objection to Dunn's Interrogatories 1, 4-5, 7, and 14-16. (See

Ex. F).  And, as with his relevancy objections, Plaintiff's privilege objections fail to comply with Fed. R. Civ. P. 26(b)(5)(A)(ii) so neither the Court nor Dunn can fully assess Plaintiff's assertion of privilege.

Plaintiff's attempt to hide behind his "General Objection" to Dunn's Written Discovery lacks any legal effect.  (Ex. F at 1-2; Ex. G at 2).  General and formulaic objections like Plaintiff's "General Objection" and privilege objections are equivalent to failing to assert any objection at all.  Panola Land Buyers Ass'n v. Shuman, 762 F.2d 1550, 1559 (11th Cir. 1985) (requiring specificity for objections to discovery); Milinazzo v. State Farm Ins. Co., 247 F.R.D. 691, 695 (S.D. Fla. 2007) (finding boilerplate objections without specificity "insufficient"); Boler v. Bank of Am., N.A., No. 2:17-cv-00303, 2018 WL 7142093, at *1 (N.D. Ala. Oct. 1, 2018) (finding boilerplate objections, without more, "inadequate and tantamount to not making any objection at all"); Williams v. Asplundh Tree Expert Co., No. 3:05-cv-479, 2006 WL 3343787, at *4 (M.D. Fla. Nov. 17, 2006) ("General objections are not useful and will not be considered by the Court.  Objections should be specific and supported by a detailed explanation.").  Similarly, "[a] blanket claim of privilege [that] does not specify what information is protected will not suffice."  Moore v. Metro. Life Ins. Co., No. 2:11-cv-00170, 2011 WL 2559627, at *2 (M.D. Ala. June 27, 2011).  Because Plaintiff's blanket claims of privilege in the Amended Discovery Responses lack and the privilege log lack sufficient explanation, Plaintiff's privilege

objections should be ignored by the Court.

Plaintiff generally and formulaically objects to Dunn's Interrogatory 5 and Requests 3, 4, 5, 28, and 35, stating "to the extent any responsive information concerns the existence or treatment of any mental health conditions, the psychotherapist privilege protects such information from disclosure." (Ex. F at 7-9, 28-29, 33-34; Ex. G at 10). But the psychotherapist privilege narrowly protects "*communications*" between a therapist—psychiatrist, psychologist, or licensed mental health counselor—and patient, not all healthcare records. See Jaffe v. Redmond, 518 U.S. 1, 15 (1996) (holding confidential communications between psychotherapist patient during diagnosis or treatment protected from disclosure). So, the Jaffe Court declined to extend the psychotherapist privilege to documents and information concerning a patient's diagnoses, treatments, symptoms, or other information related to a patient's medical or mental health care. Id.; see also Jane Student 1 v. Williams, 206 F.R.D. 306, 310 (N.D. Ala. 2002) (citing Jaffe, 518 U.S. at 15).

Dunn's Written Discovery does not seek specific communications between Plaintiff and his "psychiatrist, psychologist or licensed mental health counselor … in the course of diagnosis and treatment or in the course of psychotherapy." Jane Student, 206 F.R.D. at 310. Dunn's Written Discovery seeks all other documents (including ESI) and things concerning or relating to Plaintiff's medical and mental

health care, such as opinions about medical or mental health conditions, DSM codes, treatment summaries, appointment logs, attendance records, treatment summaries, medication prescriptions or other records, clinical observations, treatment plans, diagnoses, discharge summaries, sick-call requests, referrals or referral logs, informed consents, provider notes, and other medical and mental health records routinely found in patient healthcare files.  Psychotherapist privilege is not an inviolable shield from discovery.  Although the Eleventh Circuit has not directly addressed the waiver of psychotherapist privilege, other circuits and Eleventh Circuit district courts routinely hold that a plaintiff waives his right to the psychotherapist privilege by making his mental health condition an issue in the case. Stevenson v. Stanley Bostitch, Inc., 201 F.R.D. 551, 556 (N.D. Ga 2001).  Plaintiff did so here.  (Doc. 119 at 49 ¶¶ 203-4) (Plaintiff alleging "horrific physical and emotional injuries, including suicidal thoughts, ongoing anxiety, flashbacks, and difficulty sleeping").  Jane Student 1, 206 F.R.D. at 557 (holding mental health condition placed in controversy by asserting an intentional infliction of emotional distress claim).  As in Jane Student 1, Plaintiff placed his mental health condition in controversy by asserting his claims and seeking monetary damages for "emotional pain and suffering."  (Doc. 119 at 49 ¶¶ 203-4).

From the limited documents actually produced by Plaintiff, Donaldson's mental health restrictive housing unit serves as the focal point of Plaintiff's

15

allegations because, for reasons that will be clear when Dunn receives Plaintiff's healthcare file, Plaintiff resided there. Moreover, to evaluate Plaintiff's assertions that the three inmate-on-inmate altercations caused him injury and harm, Dunn must have access to medical and mental health documents and information before and after the incidents to evaluate if these incidents actually caused any physical or mental condition or even arguably exacerbated any physical or mental condition on a temporary or permanent basis. (Doc. 119 ¶¶ 104, 158, 170, 181, 194, 204, 214).

Plaintiff's general, formulaic privilege objections, including his "General Objection," lack a legal or factual basis, and his privilege log is wholly inadequate.[3] Plaintiff waived the psychotherapist privilege by placing his mental health at issue in this action. Moreover, Plaintiff's arbitrary attempt to limit documents and information to healthcare records surrounding the three inmate-on-inmate altercations lacks merit. Dunn therefore asks the Court to overrule Plaintiff's privilege objections in the Amended Discovery Responses, requiring complete answers to Dunn's Interrogatories 1, 4-5, 7, and 14-16 and production of documents (including ESI) and things responsive to Dunn's Requests 1-5, 7, 9-13, 16, 19-20, 22, 24, 27, 28, 31, 33, 34, and 35 in Plaintiff's possession, custody, or control.

**C.    Plaintiff's improper delays and violations of discovery rules prevent Dunn from completing necessary**

---

[3] Alternatively, if the Court has concerns about any privileged documents or information, Dunn requests in camera review of any disputed material not sufficiently described in the privilege log.

**discovery.**

Over a year after serving the Written Discovery and after countless promises of substantive answers to the Interrogatories and production of documents (including ESI) and things responsive to the Requests, Plaintiff served his Amended Discovery Responses on May 2, 2025, stating as to Dunn's Requests 1-2, 6, 7, 9-10, 12-13, 20, 22, and 27, he will "search for responsive non-privileged documents in his possession, custody, or control." (Ex. G, at 5-6, 10-17, 23-24, 27). And, as to Dunn's Requests 3-5, 9, and 12, that Plaintiff "will produce" responsive documents. (Ex. G at 7-10, 13, 15). Plaintiff's responses to these Requests suggests that, over a year after receiving Dunn's Written Discovery, Plaintiff has not made a reasonable effort to search for responsive documents in his possession, custody, or control, and he certainly failed to produce all documents and information responsive to these Requests. Plaintiff's false promises of documents and information reflect gamesmanship to avoid—or at least delay—production of documents and information about his claims to a point that Dunn might not get a chance to complete discovery or pursue third-party discovery based on the documents and information produced by Plaintiff.

Plaintiff engaged in the same avoid and delay tactics as to Dunn's Interrogatories, asserting frivolous objections and providing evasive, non-responsive answers. Plaintiff's discovery abuses demonstrate the lack of any good-faith basis

or facts to support his claims or the filing of his pleading.  Dunn afforded Plaintiff over a year to get answers and yet all Plaintiff could muster were partial answers to Interrogatories 4, 5, 6, 7, 11, 13, and 16, ignoring entire questions asked and attempting to improperly narrow the scope of the Interrogatories.  For example, Plaintiff attempts to avoid fully responding to Interrogatory 5 by relying on Rule 33(d) of the <u>Federal Rules of Civil Procedure</u>.  But Plaintiff never produced his "business records (including electronically stored information)" as required by Rule 33(d), so Plaintiff essentially ignored Dunn's Interrogatory by failing to fully answer Interrogatory 5 or produce sufficient documents from which the full answer may be determined by Dunn.  Again, Plaintiff's conduct evinces an attempt to harass, cause unnecessary delay, and needlessly increase the cost of litigation.

<u>CONCLUSION</u>

Despite Dunn providing Plaintiff months-worth of extensions and repeatedly meeting and conferring with Plaintiff's counsel with promises of substantive answers to the Interrogatories and production of documents (including ESI) and things in Plaintiff's possession, custody, or control, Plaintiff broke his promises, ignored his discovery obligations, asserted frivolous objections, and pursued a course of conduct to delay discovery of the unmeritorious nature of his claims.  If, as it appears, Plaintiff lacks any documents supporting his claims or responsive to the Requests and lacks any information supporting his claim or responsive to the

Interrogatories (including, curiously, his own head knowledge), then he can just say so. Dunn asks the Court to overrule Plaintiff's objections in the Amended Discovery Responses, requiring complete answers to Dunn's Interrogatories and production of documents (including ESI) and things responsive to Dunn's Requests in Plaintiff's possession, custody, or control.

Aside from stonewalling Dunn on the Written Discovery, Plaintiff has stonewalled Dunn on taking his deposition, relying on an irrelevant dispute related to his failure to pay for ADOC business records like other similarly situated litigations. Plaintiff has not diligently pursued his own discovery. Indeed, Plaintiff did not indicate a desire to take a single deposition until a few days ago. And now, days before the discovery deadline, Plaintiff realizes he needs more time to start and complete his discovery.

Qualified immunity, however, bars this action, and Plaintiff's ongoing delay (and demand to extend discovery) naturally prejudices Dunn's right to dismissal of this action. Pearson v. Callahan, 555 U.S. 223, 231 (2009) ("Qualified immunity is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."). In fact, "[t]he defense of qualified immunity is not just a defense to liability but a right not to stand trial, and it should be resolved as early as possible." Howe v. City of Enterprise, 861 F.3d 1300, 1302–03 (11th Cir. 2017). Dunn desires immediate

answers to his Interrogatories and production of all documents (including ESI) and things responsive to his Requests in Plaintiff's possession, custody, or control so that Dunn can prepare for and complete Plaintiff's deposition before the discovery deadline on June 13, 2025, and proceed with summary judgment without delay on the current schedule.

Respectfully submitted this 12th day of May 2025.

/s/ William J. Cranford

*One of the Attorneys for Dunn*

William R. Lunsford
Matthew B. Reeves
William J. Cranford III
Lynette E. Potter
**BUTLER SNOW LLP,**
200 West Side Square
Suite 100
Huntsville, Alabama 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com
will.cranford@butlersnow.com
lynette.potter@butlersnow.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system and/or U.S. Mail on this 12th day of May 2025:

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2120 1ˢᵗ Avenue North
Birmingham, AL 35203
Telephone: (205) 410-1185
Facsimile: (205) 419-9701
anil@dagneylaw.com

Gary Y. Gould
Jamila S. Mensah *(pro hac vice)*
Kelly Potter *(pro hac vice)*
**NORTON ROSE FULBRIGHT US, LLP**
1301 McKinney Street, Suite 5100
Houston, TX 77010
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
gary.gould@nortonrosefulbright.com
jamila.mensah@nortonrosefulbright.com
kelly.potter@nortonrosefulbright.com

Lana A. Olson
M. Wesley Smithart
**LIGHTFOOT, FRANKLIN, & WHITE, LLC**
The Clark Building
400ᵗʰ Street North
Birmingham, AL 35203
Telephone: (205) 581-1529
Facsimile: (205) 581-0799
lolson@lightfootlaw.com
wsmithart@lightfootlaw.com

*Attorneys for Plaintiffs*

Tara S. Hetzel
Vania Latitia Hosea
**ALABAMA OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Post Office Box 300152
Montgomery, AL 36130
Telephone: (334) 242-7997
Facsimile: (334) 353-8440
tara.hetzel@alabamaag.gov
vania.hosea@alabamaag.gov

*Attorneys for Givens, Morgan, Smith, Rambo, Matthews, Cook, Stevenson, and Hugh*

Terri O. Tompkins
Christian A. Montgomery
Rosen Harwood
2200 Jack Warner Parkway, Suite 200
Tuscaloosa, AL 35401
Telephone: (205) 344-5000
Facsimile: (205) 758-8358
ttompkins@rosenharwood.com
amontgomery@rosenharwood.com

*Attorneys for Deaundra Johnson*

*/s/ William J. Cranford*
Of Counsel