# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| **FRANKIE JOHNSON,** | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:21-CV-01701-AMM |
| **JEFFERSON DUNN,** *et al.,* | ) ) | |
| Defendants. | ) ) ) | |

### DECLARATION OF WILLIAM R. LUNSFORD

I, William R. Lunsford, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I am an attorney duly admitted to practice before the Alabama State Bar and in this Court, and one of the attorneys of record for Jefferson Dunn in the above-captioned action.

2. To begin this declaration, I am personally and professionally sorry for what has occurred. These events do not reflect the nature or quality of work that I have worked for decades to ensure that every client receives. I apologize to the Court, to all parties, to opposing counsel and to the State of Alabama for the terrible decisions that led to an erroneous filing. We will ensure that this never occurs again.

3. I am currently a partner with the law firm of Butler Snow LLP, where I have been since April 1, 2023. I along with Matt Reeves serve as the Practice

Group Leader and Assistant Practice Group Leader, respectively, of the Constitutional and Civil Rights Litigation group. This group includes approximately 25 attorneys in multiple offices. For purposes of this Declaration, the attorneys primarily responsible for and appearing in this matter are all situated in our office in Huntsville, Alabama.

4. I submit this declaration in response to the Court's Order to Show Cause entered on May 16, 2025 (Doc. 187, the "Order"), regarding the citation of legal authorities in Dunn's Motion for Leave to Depose Incarcerated Persons (Doc. 174, the "Motion for Leave") and in Dunn's Opposed Motion to Compel (Doc. 182, the "Motion to Compel").

5. Upon receipt of the Court's Order (Doc. No. 187), I promptly contacted the Commissioner of the Alabama Department of Corrections, the General Counsel for the Department of Corrections and the Chief Counsel for the Attorney General to inform them of the Court's Order. I have also provided them with copies of the Court's Order (Doc. No. 187).

6. These recent filings are not a reflection of the historical practices of our Firm, our practice group or our attorneys. No one associated with the State of Alabama (outside of the involved attorneys) reviewed these filings prior to their submission. Moreover, nothing in these filings reflect the professionalism, diligence or candor that should be evident in every filing in this matter and the other matters

2

in which we represent the State of Alabama. As discussed in greater detail below, we sincerely apologize for this extremely poor lapse in judgment. We are dedicated to taking every necessary step to answer the Court's inquiries, demonstrating the isolated nature of this incident and restoring the Court's confidence in our written and spoken words.

7. I have had the honor of representing the Alabama Department of Corrections and its officials in various capacities (i.e. as directly retained counsel or counsel retained by third party contractors under indemnity obligations) over more than twenty (20) years. My name and signature appear on all of the current public contracts for professional services provided by outside legal counsel to the State of Alabama (the "State") on a limited number of matters for which the State elects to hire outside counsel. As such, I am the principal responsible attorney for all matters currently assigned to the firm regarding the Alabama Department of Corrections ("ADOC"). As a general matter, we have been retained to represent the State in systemic reform litigation brought against ADOC as well as a small number of individual plaintiff cases with a factual nexus to our pending systemic reform matters. I, along with my partner Matt Reeves, routinely monitor the assignment of attorneys within our firm to our matters for the State and its Department of Corrections in effort to effectively manage the representation of the State in each assigned matter.

8. For purposes of representing current and former ADOC officials in the individual plaintiff classes, such as the Johnson matter, we routinely assign one or two younger attorneys to the matter with Matt Reeves and I providing supervisory coverage. Due to the nature of our cases and work, Matt Reeves provides more of the day-to-day oversight, supervision and direction on the individual plaintiff's cases filed against current and/or former ADOC officials; however, I also provide supervision – particularly in times when the demands of our other cases or clients or personal events render Matt unavailable. Dan Chism and Will Cranford have been primarily assigned to represent ADOC and its current and former officials in the individual plaintiff cases since they began working with us more than two (2) years ago. In sum, we approach most of our cases, including these individual plaintiff cases, utilizing this small team approach in which members of the team routinely assist, and this approach has historically proven to ensure continuity and consistency in our representation of our client.

9. THE MOTION FOR LEAVE. Consistent with our typical review process for filings in these individual plaintiff matters, Will Cranford drafted the initial motion seeking leave to depose an incarcerated person at issue here and he transmitted the draft to Matt Reeves for review at 10:40 a.m. on Wednesday, May 7, 2025. Matt Reeves responded to Will Cranford later that day with his revisions. I never reviewed the Motion for Leave before its filing. I do not remember even

reviewing the emails exchanged between Will Cranford and Matt Reeves regarding the Motion for Leave, although I was copied on those emails, as I was inside of a prison in another jurisdiction outside of Alabama overseeing site visits being conducted by court-appointed monitors the entirety of May 7, 2025, with limited cell connectivity. So, Will Cranford filed the Motion for Leave after receiving Matt's input and without receiving any input from me, which is entirely consistent with the manner of our workflow in these cases. I do not state this to deflect responsibility but to explain to the Court the internal process our team used in this matter.

10. THE MOTION TO COMPEL. As with the Motion for Leave, Will Cranford drafted the initial Motion to Compel and he transmitted the draft to Matt Reeves for review at 11:43 a.m. on Saturday, May 10, 2025. Matt responded with revisions to the original draft at approximately 2:45 a.m. on Sunday, May 11, 2025. Will recirculated another draft of the Motion to Compel incorporating the revisions of Matt Reeves at 7:29 p.m. on Sunday, May 18, 2025. I briefly scanned the document on Sunday night and responded to Will via email within approximately fifteen minutes, indicating that I did not have any changes. My brief review focused more on the facts outlined as the basis for the motion to compel and the bolded headings of the legal arguments. I did not conduct any detailed or substantive review of the legal authorities. Given that the document had already undergone a review by Matt Reeves, I did not conduct any level of detailed review. I certainly did not conduct

5

the level of detailed review that I would otherwise conduct if I was the sole reviewing attorney. Moreover, from my personal experiences with Will Cranford over the last two years, he has consistently demonstrated proficiency in promptly incorporating written feedback from his supervising attorneys and, as such, I did not have significant concerns about Will's incorporation of the changes provided by Matt Reeves. To avoid any duplication of effort and costs to the client, I did not enter any billable time into our time entry system for my review of the motion to compel in Johnson.

11. CITATION CONFIRMATION PRACTICES. The chronology of events surrounding the preparation of the filings at issue now in this case presented a particularly atypical situation for Will Cranford. In the typical day-to-day management of our cases, Matt or I will typically conduct a detailed review of any filing. For a variety of reasons ranging from avoiding unnecessary duplication to being efficient in the generation of legal expenses for the State, it is rare and atypical for both of us to conduct a detailed review of any particular filing. It is commonplace for Matt to conduct a detailed review and for me to provide a cursory review or scan of a document. It is equally rare for any supervisory attorney to *add* citations to a document and, in the rare event that I added cases, I would typically validate the citation or quotation from the case. For that matter, when an attorney on our team during the review process adds a citation, it is our general practice and mutual

understanding that the attorney adding the citation personally validated the accuracy of the citation or any language directly quoted from the cited authority. While it is possible over the years that I have occasionally asked younger attorneys to check a citation that I've added in my revisions, I cannot identify a specific instance in the last few years when this has occurred. In short, our historical process creates an expectation and mutual understanding that the attorney crafting and adding legal authorities ensures their accuracy and, as such, I would not have expected Will Cranford to conduct such a review of a senior, supervisory attorney's additional legal arguments or authorities. Finally, this is the only instance in over a decade of working with Matt Reeves when I have ever encountered an instance when he added a citation that he failed to validate.

12. ARTIFICIAL INTELLIGENCE. Our firm has been proactive in investigating, warning against and attempting to establish firm guidance on the use of the ever-evolving availability of products generated utilizing artificial intelligence. Under firm policy, the use of ChatGPT for legal research requires written approval from a practice group leader. I have yet to receive or approve any such request. I can state with certainty that our Firm has made the limitations upon the use of artificial intelligence abundantly clear to all of our attorneys. The conduct reported in this instance flies in the face of known Firm policy, which the Firm will handle internally. Moreover, I was not aware of any of our attorneys relying upon

artificial intelligence of any kind to prepare any of our legal filings and I can assure this Court that I along with the leadership of the Firm are revisiting this issue to evaluate ways that we can ensure that these instances do not occur again.

13. I submit this declaration in good faith and with the utmost respect for the Court's rules, its authority, and its trust. I again sincerely apologize to the Court, the parties, counsel, and to our clients.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 19th day of May, 2025.

_____
William R. Lunsford